O’NIELL, Chief Justice.
 

 The plaintiffs, or relators, are suing to compel the Department of Highways to allow them to have access to the Jefferson Highway, directly from their lands, between which the highway extends. The two tracts of land are near Baton Rouge, contiguous to the Jefferson Highway, where it approaches the Mississippi River Bridge. One tract is on the north side and the other on the south side of the highway. The two tracts extend westward from the Louisiana & Arkansas Railway right of way, and are therefore opposite each other. -The tract on the north side of the highway has an area of about 7% acres, extends 1,822 feet along the highway, and has therefore an average width of about 180 feet. It is bounded on the north by Montesano Avenue and on' the west by the Yazoo & Mississippi Valley Railway right of way. The tract on the south side of the highway has a triangular shape and an area of about 11.8 acres. It extends about 1,077 feet along the highway, and is bounded on the southwestern side by land belonging to the State and 'used for an approach to the Mississippi River Bridge.
 

 On June 24, 1937, the Department of Highways, which was then called the Louisiana Highway Commission, obtained a judgment against the present plaintiffs expropriating, for the construction of that pari; of the Jefferson Highway, the land lying between the two tracts which we have just described. During the trial of the expropriation suit the parties entered into a compromise agreement that the land should be adjudicated to the commission for the purpose of the highway at the price of $30,000, and the verdict and judgment were rendered accordingly.
 

 The plaintiffs in this suit are referred to also as relators because they are asking to have the Department of Highways compelled by mandamus to permit them to cut the curb and construct the entrances to the highway. In that sense the suit is a proceeding by mandamus. But the plaintiffs, or relators, prayed also to have the Department of Highways enjoined from interfering with them in the ' cutting of the curb or constructing of the entrances to the highway. The plaintiffs prayed, in the alternative, and only in the event that the court should hold that they were not entitled to either a mandamus or an injunction, for $24,500 damages for reduction in the value of their property by reason of their being deprived of direct access to the Jefferson Highway.
 

 The plaintiffs surveyed their lands with the idea of dividing them into lots and selling them either for residential or for industrial purposes. There was no actual subdivision of the land except on the plat of the survey. The plaintiffs propose to divide the land on the north side of the highway into 29 lots and to divide the land on the south side of the highway into
 
 *414
 
 16 lots. They demanded in their petition, therefore, the right to have 29 places of entrance to the highway from the land on the north side and 16 places of entrance from the land on the south side of the highway. But, during the trial of the case, the attorneys for the plaintiffs made a formal admission that the plaintiffs would be satisfied with 6 places of entrance to the highway from their land on the north side and 4 places of entrance from the land on the south side of the highway. This admission was made under the reservation that the plaintiffs believed that they were entitled to all of the places of entrance demanded in their petition. The attorneys for the Department of Highways made the admission that they were then and had been at all times ready and willing to grant the plaintiffs one entrance to the highway from their land on the north side, and one entrance from the land on the south side of the highway. That admission was made under a reservation that the commission believed that, on account of the extensive traffic and consequent danger to the public, the highway department was not obliged to allow the plaintiffs any place of entrance from their lands directly upon the highway. After hearing the evidence the judge of the district court gave judgment for the plaintiffs, commanding the Department of Highways to permit the plaintiffs to cut the curbs and make the necessary connections for 6 places of entrance upon the highway from the land on the north side and for 4 places of entrance from the land on the south side of the highway. In the judgment the judge also enjoined the Department of Highways and its officers and engineers from interfering with the plaintiffs in their cutting of the curbs to effect the entrances from their lands to the highway. The judge stipulated in his decree that the cutting of the curbs and making the entrances from the plaintiffs’ lands to the highway should be done in a manner satisfactory to the Department of Highways and its officers and engineers, and without injury to the highway. In his reasons for the judgment the judge declared that the cutting of the curb and making the connections should be done under the direction of the Department of Highways. It is not contended that any structural injury may result from, cutting the curb or making the entrances to the highway. The judge stipulated in his decree that the distances between the places of entrance to the highway should be approximately equal. The Department of Highways is appealing from the decision.
 

 The position of the Department of Highways is stated, substantially, thus: (1) That its refusal to permit the -plaintiffs to make access connections with the highway was an authorized regulation of the use of the highway, and hence that the plaintiffs are not entitled to compensation for any injury that might result therefrom; (2) that the refusal to permit the plaintiffs to make access connections with the highway is not an invasion of a property right; (3) that the plaintiffs were compensated by the judgment for $30,000 rendered in the expropriation proceedings, for any and all damages to their property by reason of a proper use and regulation of the public highway constructed in consequence of the expropriation proceedings; and (4), and
 
 *416
 

 only
 
 in the event that these defenses should not prevail, then that the benefits which resulted to the plaintiffs’ property by reason of the construction of the highway and the approach to the Mississippi River bridge more than offset any special injuries that the plaintiffs may have suffered. The Department of Highways denies that it is its ministerial duty to grant permission to the plaintiffs to have access connections from .their property to the highway, and contends, on the contrary, that the board is invested with a sound discretion in the matter, and hence is not subject to mandamus. The board did not except to or complain of the form of the proceeding by mandamus. In fact the suit was instituted by the ordinary process and by the granting of the delays allowed for answering in ordinary proceedings. For that reason we do not consider it important that, in addition to being enjoined from interfering with the defendants in the making of their access connections with the highway, the Department of Highways was commanded, or mandamused, so to speak, to permit the plaintiffs to make the connections. Perhaps a mandatory injunction would have been a more appropriate writ than a mandamus; but that is not important, because the enjoining of the Department of Highways from interfering with the plaintiffs in making the access connections serves every purpose that any process could serve in this case.
 

 By section 2, paragraph (a), of Article 286 of 1938, the Department of Highways is given authority to regulate and control all traffic on the public highways and bridges of the State and to adopt and enforce traffic rules and regulations. But that authority has reference to such rules and regulations as affect the public generally. The statute has no application to this case, where the plaintiffs claim a special right, and claim it as a property right, resulting from their ownership of lands adjoining the highway. The important question is whether the right which the plaintiffs demand is a property right; and that question seems to be quite well settled.
 

 In Jones Island Realty Co. v. Middendorf, 191 La. 456, loc.cit. 460, 185 So. 881, loc.cit. 882, this court quoted with approval from 29 C.J., 547, paragraph 263, thus:
 

 “An abutting owner has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the highway, and which are not common to the public generally; and this, regardless of whether the fee of the highway is in him or not.”
 

 From the same section we quote:
 

 “An abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due-compensation.”
 

 In 25 Am.Jur., § 154, p. 448, decisions by the Supreme Court of the United States and by the courts of last resort of thirty of the states are cited in support of this pronouncement :
 

 
 *418
 
 “The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon. Such right is appurtenant to the land, and exists when the fee title to the way is in the public as well as when it is in private ownership. It is a property right of which the owner cannot be deprived without just compensation.”
 

 In the case of Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N. E. 325, 328, 47 A.L.R. 897, the plaintiff prayed for a writ of mandamus to compel the commission to grant him permission to have a place of entrance from a public highway to his adjoining land, to facilitate its use as a gasoline filling station. The commission had rejected the plaintiff’s application. The Supreme Judicial Court, in granting the writ of mandamus, said:
 

 “The respondent’s duty was to grant a way of access upon the petitioner’s application subject to such reasonable regulations and requirements as to location, construction and use as it deemed to be necessary for the public safety and convenience.”
 

 In the syllabus of the opinion it is declared :
 

 “Commissioners having supervision of a boulevard cannot refuse to grant an abutting owner access from the roadway to his property to facilitate its use as a gasoline filling station.”
 

 “Access to a public highway is one of the incidents of the ownership of land bounding thereon, and the right is appurtenant to the land and exists when the fee of the way is in the municipality as well as when it is in private ownership.”
 

 In the annotation of that decision, in 47 A.L.R. 903, the case of Metropolitan District Commission v. Cataldo, 257 Mass. 38, 153 N.E. 328, 329, decided at the same time when the Anzalone case was decided, is distinguished from the Anzalone case. In the Cataldo case the court held that the commission’ had no right to exclude the abutting landowner from access to the highway for purposes of a gasoline filling station, but the court directed the entry of a decree enjoining the landowner, Frances Cataldo, from removing the curbing in order to provide an entrance to her property from the highway, because, as the court observed, there was no way of knowing whether the commission, when it acted upon her application, “recognizing her legal right of access”, would permit the exit and entrance to be constructed at the places selected by her, or whether, if only one place of access should be approved, it would be at one of the places already selected by Frances Cataldo.
 

 In the annotation to the Anzalone case it was said that the court had observed in that case, as well as in the Cataldo case, that when the commission had taken the position that the applicant should not have any right of entrance from the boulevard to his or her adjoining premises, for the purpose of a gasoline filling station, the applicant was right in proceeding by petition for a writ of mandamus.
 

 In the case of Genazzi v. Marin County, 88 Cal.App. 545, 263 P. 825, 826, decided by the California District Court of
 
 *420
 
 Appeal, cited by the Department of Highways, the plaintiff prayed for a mandatory injunction to prevent the county and the supervisors from doing certain drainage work in a way that would interfere with his access to a public road. , The court held that the plaintiff’s allegation that the diversion of the drainage would shut off the ingress to and egress from a large part of his land adjoining the road was a mere conclusion of the plaintiff and did not state a cause of action for an injunction. But in the course of its opinion the court stated what seems to be accepted generally as the law on the subject, thus:
 

 “Generally speaking, an abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation. But an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, although entire access cannot be cut off. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of- complaint.”
 

 The Department of Highways has authority in a case like this to limit the number of access connections to such extent as the department deems necessary for the public safety. The judgment of the officers and engineers of the Department of Highways is entitled to great deference because of their professional and superior knowledge of the necessities of the case and of the danger to the public. But the authority of the Department of Highways is not above or beyond that of the courts. To deny to the landowner a judicial investigation of his rights in a case like this would violate his constitutional guaranty that private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid. The plea of the Department of Highways that the compensation which was allowed to the landowners in the judgment expropriating their land for the purpose of the highway included compensation for the property right Vhich the landowners are now asserting is not well founded, because the judgment rendered in the expropriation suit did not purport to deprive the landowners of the right to have direct access to the public highway from their remaining -lands, contiguous to that which was expropriated for the highway. For that reason the decisions cited in the brief for the Department of Highways, maintaining that the compensation allowed to landowners in expropriation suits is presumed to be adequate compensation for all damages —foreseen or unforeseen — that may result to the remaining land by the construction of the public work for which the land is expropriated, are not controlling in this case.
 

 There is no good reason why we should amend the judgment by reducing the number of access connections • which the judge of the district court has allowed. The six connections on the north side of the highway will be approximately 300 feet apart and the four connections on the south
 
 *422
 
 side will be approximately 270 feet apart. The distances will be even greater than that if one of the connections is located at or near each end of each tract. The distances between the access connections therefore will be not much less than the ordinary distance between street crossings on the highway. The judge of the district court rendered a very well prepared opinion on this subject, displaying great care and ability in balancing the landowners’ rights against the public safety; and we see no ‘error in his judgment.
 

 The judgment is affirmed.