borde and against the warrantor, Joseph L. Escude, also with legal interest from judicial demand.

It Is Further Ordered that there be judgment in reconvention herein in favor of Joseph L. Escude and against plaintiffs in the sum of $104.73, with legal interest thereon from judicial demand.

The costs of this appeal are to be paid by plaintiffs, all other costs are taxed against Joseph L. Escude.

82 So.2d 698

**ENGLISH REALTY COMPANY, Inc.**

**v.**

**Mrs. Helene Rabe MEYER et al.**

**No. 42032.**

June 30, 1955.

Rehearing Denied Oct. 4, 1955.

———◆———

Simon Herold, Dimick & Hamilton, Shreveport, for defendants-appellants.

Cook, Clark, Egan, Yancey & King, Shreveport, for plaintiff-appellee.

John Gallagher, Shreveport, for defendant-appellee.

McCALEB, Justice.

Plaintiff, a holding company for a common carrier known as Red Ball Freight Lines, instituted this suit under Article 699 of the Civil Code to obtain a right of passage across certain land, located in the city of Shreveport, owned in indivision by defendants, S. L. Meyer, J. M. Meyer, Mrs. Helene R. Meyer and C. E. Meyer, Jr. The salient facts upon which the cause of action is founded are as follows:

In December of 1950, plaintiff bought for $120,000 an 18-acre tract lying immediately southwest of the right-of-way of the Allen-Dalzell-Linwood Overpass. This property is bordered on the west by the Texas & Pacific Railroad, which runs in a northerly direction turning east, and fronts on Linwood Avenue, which likewise runs in a northerly direction and then curves west passing over the Texas & Pacific Railroad. Prior to 1953, plaintiff sold to various persons parts of the 18 acres of land, retaining only 4.94 acres situated at the extreme north end of the original 18-acre tract. This acreage forms a triangle, bounded by the railroad right-of-way on one side and the Linwood Avenue approach to the viaduct on the other, and abuts on the south a four-acre tract which plaintiffs sold to defendants [1] for $32,000 on July 26, 1952.

Plaintiff's land has 700 front feet on Linwood Avenue, most of which is below the level of the ramp leading over the viaduct. However, there are approximately 43 front feet at the southern end of the property which are virtually on the same ground level as the adjacent highway.

In its petition, plaintiff sets forth that its property is enclosed and that it has no access to a public road, the nearest public road being Linwood Avenue. It is averred that the only practical way to reach Linwood Avenue is over and through defendants' property and that the governing authorities of the City of Shreveport have decreed that it may not enter Linwood

---

[1.] Charlton E. Meyer, one of the original purchasers, died in 1953 and the defendants, Mrs. Helene R. Meyer and C. E. Meyer, Jr., are his successors.

Avenue at any point north of the center line of Dalzell Street (which connects perpendicularly with Linwood Avenue at a point approximately 200 feet south of the division line between plaintiff's and defendants' land). The prayer was for judgment granting a right of passage 30 feet wide (coupled with the right to build and pave a road over same) across the front of defendants' property bordering on Linwood Avenue [2] and, in the alternative, for some other right of passage to be fixed by the court. It was stated in the petition that the granting of the servitude would not damage defendants' property but, if it be found otherwise, then the damages should be fixed and assessed by the court.

Defendants pleaded that plaintiff does not state a cause of action because its land was not enclosed as adequate frontage was available to it for access along Linwood Avenue, on the east, and along the railroad right-of-way on the west of its property and, furthermore, that it had not been prevented by any legally constituted authority from making an entrance into its property from Linwood Avenue. Before this exception was heard, plaintiff amended its petition and joined the City of Shreveport as a party defendant so that the city might be bound by any decision of the court with respect to its denial to plaintiff of the right

of access to and use of Linwood Avenue from its property.

Defendants thereupon filed an exception of misjoinder of parties, an exception of prematurity and another exception of no cause of action. These exceptions were overruled and the City of Shreveport answered, stating that it would not allow plaintiff to enter Linwood Avenue at any point north of the center line of Dalzell Street. Defendants then answered, denying plaintiff's right to a servitude across their property and alternatively seeking $40,000 as damages in the event the right of passage was granted.

Following a hearing on the issues thus formed by the pleadings, the trial judge granted plaintiff a servitude 30 feet wide across the front of defendants' property parallel to and adjoining Linwood Avenue and extending from the north boundary of the property to the south line of the intersection of Dalzell Street, subject to the conditions (1) that plaintiff pay defendants damages in the sum of $1,699.47, (2) that plaintiff pave the right-of-way and (3) that said right-of-way be kept open for the use of the public. All of the Meyers have appealed and the City of Shreveport, assuming the position of defendant-appellee, requests that the judgment be affirmed.

**2.** Plaintiff intends to have Red Ball Motor Freight Lines operate a truck terminal on the premises. This enterprise will require a spacious entrance and exit to accommodate the large trucks engaged in freight hauling.

We address our immediate attention to the exception of no cause of action filed by defendants.

Article 699 of the Civil Code, upon which plaintiff's action is founded, is the first article of Section 5 of Chapter 3 of Title IV, which pertains to Predial Servitudes. Chapter 3 treats of the servitudes which are imposed by law and Section 5 thereof is specially devoted to the servitude of passage and of way. Article 699, as amended by Act 197 of 1916, provides:

"The owner *whose estate is enclosed, and who has no way to a public road,* a railroad, a tramroad or a water course may claim the right of passage on the estate of his neighbor or neighbors to the nearest public road, railroad, tramroad or water course and shall have the right to construct a road, railroad or tramway according to circumstances and as the exigencies of the case may acquire [require], over the land of his neighbor or neighbors for the purpose of getting the products of his said enclosed land to such public road, railroad, tramroad or water course, or for the cultivation of his estate, but he shall be bound to indemnify his neighbor or neighbors in proportion to the damage he may occasion." (Italics ours.)

Under their exception of no cause of action, defendants contend that the quoted Article is inapplicable to the case at bar for the reason, among others, that plaintiff's land is not enclosed, as it fronts on a public road, Linwood Avenue, and is bordered on the other side by a railroad right-of-way.

■ The point appears to be well taken, for, even if it be assumed that defendants are incorrect in their position that the abutment of the land to the railroad property renders the codal article irrelevant to the case, it is difficult to perceive how the property can be adjudged to be "inclosed" when it fronts on Linwood Avenue, a public road. Enclosed estates, as envisioned by the Articles of the Code embraced in Section 5 of Chapter 3 of the Title "Predial Servitudes", means lands shut off from access to public roads and the like by reason of their being entirely surrounded by other lands. This is made clear by Article 700, which provides for the manner in which the right of passage is to be located. It states "The owner of the estate, which is surrounded by other lands, * * *" and Article 702 declares that "A passage must be furnished to the owner of the land surrounded by other lands * * *." Thus, lands abutting a public road cannot be regarded as being within the purview of Article 699.

Counsel for plaintiff profess that the codal article can nonetheless be utilized in this case because the City of Shreveport has designated Linwood Avenue as part of an expressway or as a limited access highway and has denied plaintiff access thereto from

its property. It is further contended that, since most of the abutting frontage of 700 fee comprises a ramp or a gradual embankment leading to the overpass and since the remaining 43 feet of the frontage, level with the street, is so near to the elevated portion that use of that frontage for ingress and egress of the Red Ball trucks would create a serious traffic hazard, the refusal of the city to grant plaintiff access to the public road is entirely justified and makes necessary the application of Article 699, as the land is enclosed for all intents and purposes.

◼ These postulations are not impressive. First of all, they would apparently disregard the well-settled jurisprudence that neither the State nor its political subdivisions has the legal right to deny an abutting property owner all access to the adjoining highway.

In State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71, 75, this court had before it a suit by the owners of land contiguous to the Jefferson Highway to compel the Department of Highways to grant them access from their land to the highway. The lower court had ordered that six places of entrance be provided on the north side and four places on the south side and it was asserted, inter alia, on appeal that the Department of Highways had the right to refuse all access to the adjoining property. But this contention was rejected, the court citing as its authority the pro-

nouncements of the Supreme Court of the United States and the courts of last resort of many States, and quoting approvingly the rule of law as stated in the case of Genazzi v. Marin County, 88 Cal.App. 545, 263 P. 825, 826, thus:

> " 'Generally speaking, an abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right of easement which cannot be damaged or taken from him without due compensation. But an owner is not entitled, as against the public, to access to his land at all points in the boundary between it and the highway, *although entire access cannot be cut off*. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause of complaint.' " (Italics ours.)

◼ The foregoing demonstrates, we believe, the unsuitability of Article 699 in any case wherein the land alleged to be enclosed borders on a public road. In such matters, the abutting proprietor has his remedy against the public authority and its refusal to accede to a demand for access, even if justified, does not warrant the invocation of Article 699 of the Code on the theory that such denial of access creates an enclosure and that, therefore, the adjoining land must be burdened with a servitude in

order that passage to the same public road may be assured.

In the case at bar, the record indicates that the purchase of the original 18 acres of land by plaintiff in 1950 was subsequent to the erection of the overpass and the embankment leading to it on Linwood Avenue. When it held that acreage, plaintiff had unhampered access to the public road as it is to be presumed that the City of Shreveport would have accorded it suitable entrance and exits to and from its property even though Linwood Avenue is a limited access facility. However, if plaintiff, by reason of the various property sales it has made, now finds itself in the position of holding acreage fronting that part of the overpass approach to which the City of Shreveport might be justified in refusing to grant it access from its property, it is nevertheless not entitled to claim passage over defendants' property as the situation respecting access of which it now complains was wholly created by its own act. Such circumstances, even if actual enclavement results, do not warrant the application of Article 699 of the Code as the property still borders on a public road and its enclosure is not a direct consequence of the location of the land but of the act of the party seeking the relief.

It is our opinion that the exception of no cause of action is well founded and it is now sustained.

The judgment appealed from is reversed and plaintiff's suit is dismissed at its costs.