LANDRY, Judge
(disenting from refusal to grant rehearing).
Further consideration of the pivotal issue posed in this case leads me to conclude we erred in holding English Realty Co. v. Meyer, 228 La. 423, 82 So.2d 698, disposi-tive of the question of the applicability of La.C.C. Article 699 in this cause.
I so conclude first because I find Meyer easily distinguishable from the case at bar. Therefore, I do not consider it controlling.
In Meyer, the “landlocking” or “isolation” resulted from the owner’s voluntary action. In addition, his property fronted on a railroad. There the property owner alienated portions of his property leaving himself a parcel of land bounded on one side by a railroad and on the other by a street to which municipal authorities would not permit access. In the case at bar, the “landlocking” resulted from a condemnation procedure. The expropriating authority here concerned divided appellants’ estate into two parcels. The tract in question fronts on a Federal Interstate limited access highway to which appellant has been denied means of ingress and egress.
As I interpret Meyer, the Supreme Court there indicated the sole relief available to the owner was an action to compel the City of Shreveport to grant him access to Linwood Avenue. The Court further noted certain jurisprudence as authority for the proposition that an abutting property owner could not be denied all access to a public highway. See State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71, 75.
So far as I can determine the jurisprudence represented by Gebelin, supra, antedates the advent of Interstate Federal Aid limited access highway systems. It is common knowledge that the federal government has undertaken prime responsibility for such projects as part of the national defense system. It is equally well known that the nature of such projects demands that ingress thereto and egress therefrom be severely limited and restricted. That this is so is graphically attested by the many miles of fencing observable along the rights-of-way of such projects. These barriers, as well as other readily notable structures, are unquestionably designed to restrict access to projects of this nature so as to insure the speedy, smooth and uninterrupted flow of vehicular traffic thereon. In my view, it is highly questionable whether every property owner has the unqualified right to some access to such projects. To literally enforce such a right of access would defeat the very purpose of such projects by destroying their limited access character.
In Meyer the Supreme Court interpreted La.C.C. Article 699 strictly and literally. The court held that since the article limits its application to "The owner of the estate, which is surrounded by other lands * * ” and companion Article 702 declares “a passage must be furnished to the owner of the land surrounded by other lands * *.” (emphasis supplied), the two statutes together indicate an intent to make their terms applicable only when property is surrounded on all sides by other lands.
In my judgment, and with all due respect to the Supreme Court, Meyer appears to conflict with Mercer v. Daws, La.App., 186 So. 877, and Martini v. Cowart, La.App., 23 So.2d 655, which held Article 699 is not to be so strictly construed as to permit no deviation from its literal terms under any and all circumstances.
Moreover, it appears that in the early case of Littlejohn v. Cox, 15 La.Ann. 67, the purpose of Article 699 was said to be *81 more general than its stated intent to enable the landlocked owner to get the produce of his land to a public road. In Little-john, the intent of Article 699 was stated to be to permit an owner to enjoy the use of his property in the manner he deems most profitable.
I believe the rationale of Littlejohn to be more logical. Especially do I consider it more compatible with and adaptable to the complexity of our present society.
The framers of our Civil Code evidently intended to provide a means whereby usable property could be put to productive use. The use envisioned was not only that which might benefit the owner but the public as well.
I can think of no legal or moral justification for condemnation of usable property to total unproductivity by application of a legal technicality. I do not think that such was the intent of the framers of Article 699. I believe the key to the statute’s intent lies in the phrase “who has no way to a public road * * meaning “no access” or “no ingress or egress.”
It is common knowledge that we are living in a period of change which is accelerating with increasing rapidity. In my judgment, the pertinent statutes must be interpreted in the light of present day practicalities.
When our Code was written, land was in surplus supply. It is safe to state land is a commodity unlikely to be produced again in quantity. It is common knowledge that present astronomical population growth will, in the foreseeable future, require full utilization of every available acre. In my view, present and future public interest in adequate housing space and food supply impels both a legislative and judicial policy insuring the maximum use and development of all available land.
I dissent from the refusal to grant a rehearing in this matter.