415 So.2d 20 (1982)
Sheilah Kristine HILL, Petitioner,
v.
Thomas Jefferson HILL and A.C. Soud, Respondents.
No. 59891.
Supreme Court of Florida.
April 29, 1982.
Rehearing Denied July 9, 1982.
Sharon H. Tanner, Jacksonville, for petitioner.
William L. Coalson of Greene & Greene, Jacksonville, for respondents.
Larry Klein, West Palm Beach, for the Academy of Florida Trial Lawyers.
Elizabeth S. Baker, Miami, for Legal Services of Greater Miami, Inc.
Roberta Fulton Fox of Gold & Fox, Coral Gables, H. Jack Klingensmith of Kuvin, Klingensmith & Lewis, South Miami, and Spencer Fox, Miami, for Cassandra Newby.
Patricia Ireland, Miami, and Julia Dawson, North Miami, for Nat. Organization for Women in Florida and Florida Now.
Judith Bass, Miami, for Florida Association of Women Lawyers.
Frances M. Farina, Miami Shores, for Florida Women's Political Caucus.
Bruce Rogow, Fort Lauderdale, for American Civil Liberties Union Foundation of Florida.
Dade County Advocate for Victims, Miami, and Forum, University of Miami, School of Law, Coral Gables, on brief for amici curiae.
OVERTON, Justice.
This is a petition to review a decision of the First District Court of Appeal reported at 388 So.2d 625 (Fla. 1st DCA 1980), which affirmed, on the basis of our decision in Raisen v. Raisen, 379 So.2d 352 (Fla. 1979), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980), a summary judgment dismissing a wife's action against her husband for malicious prosecution, false imprisonment, and abuse of process. The district court certified to us, as a question of great public importance,[1] whether this Court should modify the doctrine of interspousal immunity, which bars recovery by one *21 spouse against the other, to allow recovery for intentional torts.
Without question, there exists a concern by some members of the public with respect to the doctrine of interspousal immunity, especially where one spouse has been physically abusive of the other. The retention or elimination of interspousal immunity for intentional torts presents a difficult dilemma. We find on one hand that neither a wife nor a husband should be required to suffer physical abuse from their spouse without a suitable means of retribution. On the other hand, a means of recovery within the traditional tort system can seriously affect the family unit, family financial resources, and could result in multiple inter-related court proceedings.
We hold that the protection of the family unit and its resources requires us to answer the question in the negative and reject a change in the interspousal immunity doctrine at this time. In doing so, however, we emphasize that the trial judge in a dissolution proceeding has authority to require an abusive spouse to pay necessary medical expenses and the authority to consider any permanent injury or disfigurement or loss of earning capacity from such abuse when setting alimony. We also point out that in this circumstance we are unable to modify our immunity doctrine as we did with parental immunity in Ard v. Ard, 414 So.2d 1066 (Fla. 1982), because insurance coverage is not available for intentional torts.
The present factual situation illustrates the need to retain the present immunity doctrine. This proceeding is the result of a tragic domestic relations custody dispute, complicated by the possibility that one spouse has a mental condition which may require treatment. The parties were married in August of 1972 and had a child in 1973. The wife had two children by a prior marriage. The parties separated in September, 1978, and have since had a contentious relationship concerning the custody of their minor child.
A dissolution proceeding was pending in another division of the circuit court when the wife instituted this action for malicious prosecution, false imprisonment, and abuse of process. Her complaint alleged that from time to time during the separation she would leave the marital home, taking the three children with her. In an effort to have her return home, the husband, upon locating the family, would forcibly remove the parties' child from the wife's custody and would threaten to obtain a divorce and sell the marital home. The wife alleged that she believed she could not retain custody in the city of the marital home and therefore moved herself and the children to Tennessee where they resided in a religious commune. The wife alleged that the husband and his attorney thereafter illegally subpoenaed her bank records to locate her. The husband then flew to Tennessee to again take custody of the child. The wife returned to Florida and, with several friends, visited the child at the marital home, at which time the husband called the police and had her vacate the premises. The final and principal allegation is that the husband sought to have her involuntarily committed for mental illness and that he succeeded in doing so for a one-day period. She asserted these actions were committed willfully and maliciously.
The husband responded with the affirmative defenses that his actions were done on the advice of counsel and that he had probable cause to have his wife committed. As grounds, he asserted that his wife had previously experienced a mental breakdown requiring her confinement in a straitjacket; that she had been previously committed for mental incompetency for three and one-half months; that she followed a charismatic movement, devoting much of her time to religious writing inspired by divine trances; and that she had destroyed a new television set, claiming it was an instrument of the devil, after which "she affixed a makeshift shrine which included a Bible, candles, and other paraphernalia having meaning only to her." The husband claimed that he did not act maliciously but only for the safety and welfare of the parties' five-year-old daughter. The husband supported his assertions *22 in part with an affidavit from the family minister:
I am a minister, and I have talked with Mrs. Hill at the request of her husband. She appears mentally sick, which expresses itself in fanatic religious behavior. Believes God is speaking to her verbally. She annointed [sic] the cat with oil before the children. She feels her husband is demon possessed. Normally she is a very intelligent person, but has lost all prespective [sic] and responsibilities toward her children and family.
The record further reflects that the wife had a history of mental problems, having been declared incompetent and confined to a mental hospital prior to her marriage, and that, after the marriage, she was under the care of a psychiatrist and diagnosed as a paranoid schizophrenic. Further, at a deposition made part of the summary judgment proceedings, the child's treating physician testified that in his opinion the wife posed a danger to the child and her husband.
The trial court granted summary judgment for the husband, finding that, under the interspousal immunity doctrine, one spouse cannot sue the other for tortious conduct committed during the marriage.[2] The district court affirmed the summary judgment, expressly finding that the husband was immune from suit under this Court's recent decision in Raisen v. Raisen. The court expressed the view, however, that clear distinctions existed between this cause and the situation presented in Raisen, specifically that: (a) suit was for an intentional tort rather than simple negligence; (b) the nature of an intentional tort action renders it a poor candidate for collusive claims; (c) the husband and wife were separated at the time of the alleged tort and were subsequently divorced; (d) the parties' actions were themselves disruptive of marital harmony; and (e) no insurance was involved. The court then certified as a question of great public importance whether interspousal tort immunity should apply to an intentional tort.
On appeal to this Court, the wife first contends that the husband waived interspousal immunity by his alleged abuse of process. This contention is without merit and justifies no discussion. We also reject again the contention that the Married Woman's Property Act has abolished the interspousal immunity doctrine in this state. Raisen; Bencomo v. Bencomo, 200 So.2d 171 (Fla. 1967); Corren v. Corren, 47 So.2d 774 (Fla. 1950). The principal contention of the wife and numerous amici is that we, as a matter of public policy, should overrule the doctrine of interspousal immunity or at least modify it to allow claims for intentional torts.
Interspousal tort immunity is a judicial doctrine established to protect the family unit. Historically, under Biblical, Roman, and English common law, the "family" has had certain responsibilities, obligations, and special protections.[3] Many of these are presently contained in our constitution, *23 statutes, and judicially established doctrines. For example, we acknowledge the obligations of spouses for child support, alimony[4], and, in the event of marriage dissolution, the fair division of property acquired during marriage.[5] We also protect homestead property from creditors,[6] prohibit garnishment of head of family wages,[7] and safeguard the interest of surviving family members in a decedent spouse's estate.[8]
The family continues to be an unofficial sociological governmental structure necessary and vital to our free, independent society. We look with great concern upon societies that break up the family unit and entrust children to the state for education and training. Protection of the family unit is a significant public policy and we are greatly concerned by any intrusion that adversely affects the family relationship or the family resources. That is the reason we rejected abolition of the interspousal immunity doctrine in Raisen v. Raisen. We emphasize, however, that the purpose of the doctrine is to protect family harmony and resources, not to shield the wrongful acts of a spouse, whether negligent or intentionally tortious, and not to protect insurance companies.
As illustrated by the instant factual situation, intentional interspousal tort claims ordinarily arise in marital disputes which result in dissolution and which can adversely affect all family members, not just the spouses. For example, the wife in the present action seeks damages for her alleged improper commitment. The commitment, in turn, is directly related to the custodial dispute and the wife's ability to care for her child. Consider, too, that section 61.08, Florida Statutes (1977), directs the trial judge in a dissolution proceeding to consider "the physical and emotional condition of the spouse" in determining the appropriate amount of alimony support. The wife's mental and emotional condition could also be a critical issue in the determination of child custody.
The petitioner and amici contend that we should allow interspousal suits for intentional torts under the traditional tort system and under the same principles as with unmarried parties in civil litigation. We are cognizant that some jurisdictions have abolished the doctrine of interspousal immunity in its entirety,[9] and that other jurisdictions have modified the doctrine for intentional torts.[10]
Our concern is in what manner the abolition of this common law doctrine will affect the family unit, including children and the family resources. We conclude that the abolition would be detrimental to the family as a whole.
We choose not to place lawyers, judges, litigation costs, and the full trappings of an adversary tort system into a family dispute while the parties remain married. The ramifications of that type of action are not in any way conducive to a reconciliation. We recognize that intentional tortious conduct by one spouse against the other clearly shows marital disharmony and, in many instances of serious tortious conduct by one spouse against the other, a dissolution proceeding follows. If we accept petitioner's and amici's view, two courts would be necessary to resolve these types of disputes between a husband and wife, one court to determine the damages for the tort claim and one court to determine dissolution matters and child custody. Moreover, if we *24 were to allow a separate proceeding for an interspousal intentional tort claim under our traditional tort system, a contingent attorney's fee would realistically be necessary to provide counsel in the tort action. This, however, is inconsistent with the strong public policy of prohibiting contingent fees in domestic relation matters because such fee arrangements can adversely affect possible reconciliation. Sobieski v. Maresco, 143 So.2d 62 (Fla. 3d DCA 1962).[11] Contingent fee arrangements in domestic relation matters are now deemed unethical. See Florida Code of Professional Responsibility, Ethical Consideration 2-20, Disciplinary Rule 2-106(C); see also The Florida Bar v. Winn, 208 So.2d 809 (Fla. 1968). Further, we find that a separate tort action in an interspousal dispute could be used as simply a legal tool to achieve a better settlement in the dissolution proceeding.
In our view, it makes no sense to have different courts and separate proceedings determine inter-related issues between spouses. We find that the use of two court proceedings to resolve essentially one matter is neither efficient nor beneficial to the family unit, its resources, or possible reconciliation. The cost alone of multiple proceedings, even if reconciliation occurs, could adversely affect family resources and, in some instances, could substantially destroy family resources not only for the spouses but for their children as well.
We conclude that in Florida the protection of the family unit and family resources, including the needs of minor children, merits a continuation of the interspousal immunity doctrine for intentional torts. In reaffirming the doctrine, we have taken into consideration and emphasize the authority of the trial judge in a dissolution proceeding to direct the offending spouse to pay the necessary medical expenses not covered by insurance and the judge's authority to consider any permanent injury, disfigurement, or loss of earning capacity caused by an intentional tort in establishing appropriate alimony under section 61.08, particularly that provision which provides "the court may consider any other factor necessary to do equity and justice between the parties."
For the reasons expressed, we approve the decision of the district court of appeal in this case.
It is so ordered.
BOYD, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., and ADKINS, J., dissent.
NOTES
[1] See art. V, § 3(b)(4), Fla. Const.
[2] The wife also brought suit against the husband's attorney, A.C. Soud, for malicious prosecution, false imprisonment, and abuse of process. The trial court granted summary judgment for the attorney on the former two charges but allowed the wife to amend her complaint as to the latter abuse of process charge. The district court affirmed. The wife sought no further review of the case's disposition concerning the attorney and that issue is not before us.
[3] For general background on interspousal and intrafamily protections, obligations, and immunities, see 1 W. Blackstone, Commentaries *441-45; J. Bryce, Studies in History and Jurisprudence ch. XVI (1901); A. Kocourek & J. Wigmore, Primitive and Ancient Legal Institutions chs. XV-XVI (1915); H. Maine, Ancient Law 147-54 (5th ed. 1875); H. Maine, Early History of Institutions 310-19 (1888); II F. Pollock & F. Maitland, The History of English Law ch. VII (2d ed. 1903); W. Prosser, Handbook on the Law of Torts ch. 23 (4th ed. 1971); II C. Sherman, Roman Law in the Modern World 56-64 (1917); R. Sohm, The Institutes §§ 90-107 (3d ed. J. Ledlie trans. 1907); Couch, Woman in Early Roman Law, 8 Harv.L.Rev. 39 (1894); McCurdy, Personal Injury Torts Between Spouses, 4 Vill.L.Rev. 303 (1959); McCurdy, Torts Between Persons in Domestic Relation, 43 Harv.L.Rev. 1030 (1930); Williams, The Legal Unity of Husband and Wife, 10 Mod.L.Rev. 16 (1947); Woodward, Legal Evolution of Married Woman, 61 Alb.L.J. 213 (1900).
[4] See §§ 61.08, .09, .11, .13, Fla. Stat. (1979) (responsibility of family support).
[5] See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) (property distribution at marriage dissolution).
[6] See art. VII, § 6, Fla. Const. (homestead property exempt from taxation); art. X, § 4, Fla. Const. (protection of homestead property from forced sale).
[7] See § 222.11, Fla. Stat. (1979).
[8] See ch. 732, pts. I-IV, Fla. Stat. (1979) (protection of surviving spouse's and children's rights in decedent spouse's estates).
[9] See cases collected at 92 A.L.R.3d 901, § 13 (1979).
[10] See cases collected at 92 A.L.R.3d 901 § 15 (1979).
[11] Accord Valparaiso Bank & Trust Co. v. Sims, 343 So.2d 967 (Fla. 1st DCA 1977); Salter v. St. Jean, 170 So.2d 94 (Fla. 3d DCA 1964); McCarthy v. Santangelo, 137 Conn. 410, 78 A.2d 240 (1951); In re Fisher, 15 Ill.2d 139, 153 N.E.2d 832 (1958); Dannenberg v. Dannenberg, 151 Kan. 600, 100 P.2d 667 (1940); Baskerville v. Baskerville, 246 Minn. 496, 75 N.W.2d 762 (1956); State ex rel. Neb. State Bar Ass'n v. Jensen, 171 Neb. 1, 105 N.W.2d 459 (1960); In re Smith, 42 Wash.2d 188, 254 P.2d 464 (1953).