416 So.2d 957 (1982)
Lilliann Bouldin MILLS, Pike Hall Trichel, and Milton C. Trichel, Jr.
v.
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS.
Lilliann Bouldin MILLS, Pike Hall Trichel, and Milton C. Trichel, Jr.
v.
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Nos. 14914, 14915.
Court of Appeal of Louisiana, Second Circuit.
June 15, 1982.
Rehearing Denied July 23, 1982.
William W. Irwin, Jr., Bryan Miller, Harvey Lee Hall, Johnie E. Branch, Jr., Baton Rouge, for defendant-appellant, State of La. through Dept. of Highways (now Dept. of Transp. and Development.
Milton C. Trichel, Jr., Neil Martin Trichel, Eileen Trichel Baldwin, Shreveport, for plaintiffs-appellees.
*958 Before PRICE, MARVIN, and JASPER E. JONES, JJ.
MARVIN, Judge.
In these consolidated possessory actions, the State appeals a judgment maintaining the landowners' possessory right of enjoyment of 523.54' of access along the west side of their property that abuts the State's right of way at the interchange of Interstate 220 with U.S. Highway 71 in Shreveport.
We had earlier held that the State's expropriation of the southernmost .892 acres of the landowners' property did not include the 523.54' control of access. State, Dept. of Highways v. Trichel, 348 So.2d 1260 (La. App. 2d Cir. 1977). Before that opinion, the landowners filed the first of these possessory actions, alleging as a disturbance in fact, the State's appropriation and partial fencing of the right of access. When the State resumed its efforts to fence the entire 523.54' some 14 months later, the landowners filed the second of these possessory actions. Construction of the interchange has been completed and the highway opened to traffic many months before these actions were tried.
The "just compensation" merits of the expropriation of the .892 acre was consolidated with the possessory actions below, but has not been tried. The judgment appealed allows the State 60 days in which to either expropriate the right of access or institute a petitory action. That judgment also stayed the trial of the expropriation action for 60 days. See State, Dept. of Highways v. Trichel, 415 So.2d 22 (La.App. 2d Cir. 1982), where the State's appeal in the expropriation action was dismissed.
In this appeal, the State did not file an exception of no cause of action, but suggests in three specifications of error that the landowners "have no cause to complain" and should not be able to bring a possessory action in circumstances where the State is exercising its police power of regulating and controlling traffic upon the public highway right of way. LSA-Const. Art. 1, § 4, LRS 48:304, State ex rel. Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71 (1942); Department of Hwys. v. Southwestern Elec. Pow. Co., 243 La. 563, 145 So.2d 312 (1962).[1]
In these circumstances, we shall consider on our own notice the landowners' cause of action. CCP 927. In Gebelin, the State expropriated a highway right of way for which the landowners were paid $30,000. After the expropriation was concluded and the highway was constructed, the landowners brought actions to mandamus the State to allow them access to the highway and to enjoin the State from interfering with the landowners' construction of access ways. Alternatively, the landowners sought a money judgment for the diminution in value of the remainder of their property. The State contended that it was acting within its constitutional and statutory authority to regulate use of the highway and that its refusal to permit access ways to the landowners was not an invasion of the landowners' property rights. The supreme court did not agree and upheld the judgment that granted several access ways to the landowners.
"An abutting landowner on a public highway has a special right of easement... in the public road for access purposes... a property right which cannot be ... taken from him without due compensation. * * *
"The Department of Highways has authority... to limit the ... access ... to such extent as the department deems necessary for the public safety ... [b]ut the authority is not above or beyond that of the court. To deny to the landowner a judicial investigation ... would violate his constitutional guarantee that private property shall not be taken or damaged except for public purposes and after just *959 and adequate compensation is paid." 8 So.2d at p. 74, 75.
After Gebelin, the Legislature authorized the highway department to prohibit access to highways. See LRS 48:1(12), 302, 303, 344, and State v. Hub Realty Company, 239 La. 154, 118 So.2d 364 (1960), and statutes cited therein.
"The highway authorities may design any controlled-access facility and ... prohibit access ..." § 302, in part.
"Entrances to and exits from private properties adjacent to the rights of way of state highways may be ... prohibited in the interest of the safety of the traveling public ... The department may apply to the courts for such process as may be necessary to make the provisions of this section effective." § 344, in part.
"The highway authorities may acquire private ... property and property rights for controlled-access facilities ... including rights of access ... by donation, purchase, exchange, lease, or expropriation in the same manner as they ... may be authorized to acquire property ..." § 303, in part.
LRS 48:441 et seq., the quick-taking statute, states the manner in which the department may acquire "both corporeal property and servitudes ..." by expropriation. § 441. Emphasis supplied. When the requirements of that statute have been followed, the "title to the property and property rights specified in the petition [for expropriation] shall vest in the department and the right to just and adequate compensation shall vest in the persons entitled thereto." § 445, in part. Emphasis supplied.
In its argument here, the State recognizes that the owner of lands abutting a public highway has the special property right of access to a public highway abutting his property, but contends that the "inherent police power of the State gives the highway authorities ... the power to control the use of that right by deciding at which point or points along the boundary... access shall or shall not be available for the use of said right." This quotation from Gebelin is cited as authority for that argument.
"But an [abutting] owner is not entitled, as against the public, to access to his land at all points in the boundary ... although entire access may not be cut off. If he has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with by the public, he has no cause for complaint." 8 So.2d at p. 75.
The quoted principles have not been enervated by the 1975 Louisiana Constitution or by the statutes enacted since Gebelin. We view these authorities and Gebelin as stating that the abutting landowner has cause for complaint if the highway authority, in the exercises of its police power, substantially interferes with his means of ingress and egress to the public highway without expropriating that access and paying just compensation.
The threshold question then is whether the landowner has alleged or shown that his right of access has been substantially interfered with by the State highway authorities in the exercise of its recognized police power. Here it is shown that the landowners had 673.54' abutting U.S. Highway 71 across which they enjoyed three access ways prior to the State's erection of the fence. The State's fencing of 523.54' removed two of these access ways. This deprives these landowners of either 52/67 of their former footage access or 2/3 of their actual access ways. In either event, the interference must be deemed substantial and as affording the landowner "cause" to complain of the disturbance of the special property right of access. Gebelin, supra.
The State's third assignment relates to the holding of Southwestern Elec. Pow. Co., cited supra. There the electric utility serving Shreveport obtained from the City the franchise of using the city streets to install its utility lines and equipment to transmit electricity. The City later gave authority over these streets to the State. The threshold question there was whether the utilities' franchise right "... is a property right *960 of such a nature that it is not subject to reasonable exercise of the State's police power by requiring removal ... of their lines ... without reimbursement of the costs ... for the forced change of location."
On rehearing, it was held that the utility in such circumstances did not have a special property right and that the State could compel the utility to remove the transmission lines and equipment at its own expense. That holding does not avail the State in this appeal.
The owner of lands abutting a public highway has a special property right of access which may not be substantially interfered with or prohibited unless the highway authorities, in the exercise of their police power acquires this property right "by donation, purchase, exchange, lease, or expropriation in the same manner as they ... may be authorized to acquire property ..." LRS 48:304, quoted supra in part. Gebelin, supra.
While it is true that the landowners might have employed an action for inverse condemnation damages for the appropriation by the State of this property right of access, the availability of that remedy does not preclude the landowners from bringing any other action which may afford them relief from the appropriation. The State simply has not acquired this property right of access by conventional conveyance or by expropriation. To paraphrase Gebelin, the Department of Highways has authority to limit and even prohibit the right of access an abutting property owner enjoys to a public highway, but this authority is not above or beyond the authority of the courts to enforce the constitutional guarantee that private property shall not be taken or damaged except for public purposes and after just compensation is paid. LSA-Const. Art. 1, § 4. This property right of access is in the nature of a servitude, the expropriation of which, when substantially interfered with by the State, may be compelled by the owner of abutting lands in an action in the courts of this state to enforce the constitutional guarantee. See Gebelin, supra. This constitutional guarantee is not affected by the fact that the appropriator is exerting police power. See Southwestern Elec. Pow. Co., supra, at 145 So.2d p. 324.
The judgment appealed is affirmed at appellant's cost.
NOTES
[1] The State's three specifications of error are that the district court committed legal error ...

"in failing to apply the principle of ... [Gebelin] * * *
"by failing to apply the principle of law contained in LSA-Const. Art. 4, § 1 ...
"in failing to apply the principle of ... [Southwestern Elec. Pow. Co.] * * * "