DENNIS, Justice
(concurring).
[November 24, 1993]
I respectfully concur.
Because the taking and damaging of legal property rights, as opposed to the concrete objects of those rights, is by nature abstract and conceptual and often incompletely understood, there is an uncommon need for a firm framework of analysis. Accordingly, in State through DOTD v. Chambers Investment Co. Inc., 595 So.2d 598 (La.1992), this court adopted a three-pronged test for determining whether a claimant is entitled to eminent domain compensation: First, has a person’s legal right with respect to a thing been affected? In other words, does he have a recognized species of private property right that has been affected, regardless of whether causes of action may exist on other theories? Second, if so, has this particular property, either a right or a thing, been taken or damaged, in a constitutional sense? Third, and if so, was the taking or damage done for a public purpose under Article I, § 4 of our state constitution? See A. Yiannopoulos, Property, 2 La.Civil Law Treatise § 1 (3rd ed. 1991); W. Stoebuck, Nontrespassory Takings in Eminent Domain, 19-20 (1977).
Initially, the claimants’ interest that they contend was adversely affected — access to their commercial establishment — clearly constitutes property within the purview of our eminent domain law. The interest of a property owner in the accessibility of his land by motor vehicular traffic is a property right which cannot be damaged or taken without due process and just compensation. E.g., State ex rel Gebelin v. Department of Highways, 200 La. 409, 8 So.2d 71 (1942); M. Dakin and M. Klein, Eminent Domain in Louisiana, 117-18 (1970). Therefore, it is necessary to proceed to the next prong of the three-pronged test and determine whether this property interest was taken or damaged in the constitutional sense.
It is important to bear in mind that the claimants suffered at most a partial rather than a total loss of access. The rule with respect to a total loss of access is now clear. Whatever may have been the prevailing view in the previous century, today there is no doubt that governmental action completely extinguishing a land owner’s access to the street or highway system amounts to a taking or damage to property, regardless of whether part of the owner’s physical land is actually taken. State ex rel Gebelin v. Department of Highways, supra; Dakin, supra; Stoebuck, supra at 28-34.
It is much less clear, however, what rule should be applied in cases of partial loss of access. In this area, the changing concepts of “taking” and “property”, and “police-power” versus “eminent-domain” have resulted in “a jumble of doctrines, lack of uniformity of decisions, and ... dissimilar treatment of landowners who have suffered similar kinds of harm.” Stoebuck, supra at 34-35. Nevertheless, there has been increasing judicial reliance on a line of analysis that serves to coherently reconcile most of the recent cases. Under that analysis, the owner of land enjoying access to a public way is recognized as having a property right to have reasonable access to that roadway or to the general system of public roads by means of locomotion that are normal for land situated as his is. Therefore, a taking or damage in the eminent domain sense occurs if some action *1160 by an entity having the power of eminent domain diminishes such access to the point that it is no longer “reasonable”. Stoebuck, supra at 70 and 34-71, as well as authorities cited therein; see also cases discussed by Dakin, supra at 121-27 and pocket part at 46-48.
The foregoing analysis rests on Justice Holmes observation that:
Government hardly could go on if, to some extent, values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation, and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts.
Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 413, 43 S.Ct. 158, 159, 67 L.Ed. 322 (1922).
Applying these precepts to the present case, it appears that the claimants have failed to prove that their property interest was damaged or taken in the constitutional sense. Although the claimants to some extent suffered a loss of direct access to their property, they by no means have been denied reasonable access to most of the ways previously serving the property or to the road system in general. Prior to construction, there were numerous methods of access: (1) from the south-bound lane of Clearview by left turn across the opposite lane to the frontage road leading to the shop; (2) from the northbound lane of Clearview by right turn onto the frontage road to the property; (3) from I — 10, either east-bound or west-bound, off-ramp to north Clearview and then right turn onto frontage road to the shop; and (4) two other more circuitous routes: north on Clearview, right on Veterans, through the shopping center parking lot to Sanford Street, to the shop or north on Clearview, right on Veterans, right on Kingman, right on Trenton, right on Woodlawn, right on Sanford to the shop. After the redesign and construction of the Clearview/I-10 interchange the property now may be accessed: (1) from south-bound lane of Clearview by left turn across opposite lane to frontage road, the same as before construction; (2) from north-bound lane of Clearview a right turn onto the frontage road is now prohibited, motorists must proceed by a slightly more circuitous route by continuing north on Clearview across Veterans for about one block, making a “U” turn and then proceeding south to the left-turn lane onto the frontage road to the shop; (3) the access from I-10 east-bound takes the Clearview-North exit and proceeds north on Clearview the same as northbound Clearview traffic — this route is also somewhat more circuitous than before construction; (4) traffic from 1-10 west-bound now takes the redesigned exit ramp onto the frontage road and then swings around the triangular block at Trenton and Woodlawn and then back up the frontage road to the bicycle shop; (5) after construction access No. 4 described above, remains exactly as before construction. Clearly, some of the access options have been limited somewhat but not nearly enough that the access to the road system is no longer reasonable. As for the temporary interference with access claim, as the facts alluded to in the majority opinion indicate, there was no taking or damage in the constitutional sense because, considering both the physical and temporal extent of the interference, the loss suffered was not substantial.
Finally, because the claimants failed to prove a taking or damage to their property interest, it is not necessary to consider the final prong of the three-pronged test, viz., whether the taking or damage was for a public purpose. Furthermore, it is not necessary to consider two irrelevant questions discussed by the court of appeal and the majority of this court, viz., whether there was special damage peculiar to claimants’ property and whether the state made work on its estate causing actionable inconvenience to the claimants under Civil Code articles 667-669. The claimants were not required to show that they sustained special or peculiar *1161 damage; their proof of any damage or taking in the constitutional sense would have sufficed. However, they were unable to prove the only type of constitutional damage seriously contended for, temporary and permanent partial losses of access to their property beyond the magnitude permissible under the police power. Consequently, except for the three-pronged analysis, the discussion of Chambers is unnecessary; and Reymond v. State, Dept. of Highways, 255 La. 425, 231 So.2d 375 (1970) is inapposite and mostly obsolete.