704 So.2d 1106 (1998)
Hernan GARCES, Appellant,
v.
Marie Clemence GARCES, Appellee.
No. 97-1492.
District Court of Appeal of Florida, Third District.
January 7, 1998.
Simon, Schindler & Sandberg and Theodore R. Dempster, Miami, for appellant.
Frederick C. Sake, Miami Beach, for appellee.
Before NESBITT, JORGENSON and COPE, JJ.
COPE, Judge.
Hernan Garces appeals a final judgment in a dissolution of marriage action. We affirm.
The parties were married for twenty-two years through the date of separation, and twenty-four years through the date of the final judgment. At the time of dissolution, the husband was fifty-six years old and the wife, fifty-four. The husband earns $56,000 per year from full-time employment. The wife earns $35,484 from full-time employment plus $5000 annually from a part-time job.
The trial court awarded permanent periodic alimony of $1,000 per month. The husband contends that since the wife earns a living wage, she is not entitled to permanent alimony at all. This precise argument was rejected in Walter v. Walter, 464 So.2d 538, 539 (Fla.1985) (rejecting proposition that permanent alimony should be utilized "only upon a showing of lack of capacity for self-support and only as a last resort").
As stated in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980):
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered *1107 when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds. The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates.
Id. at 1202. The criteria for alimony have now been codified by the legislation in section 61.08(2), Florida Statutes (1995).[1] While the wife's earning ability is one factor to be considered, it is not by itself dispositive and does not preclude an award of permanent alimony in this long-term marriage where, based on the factors in section 61.08, need is demonstrated and the husband has the ability to pay.
The husband also contends that the amount of permanent alimony is excessive. We disagree. Without attempting to review all of the evidence, during the pendency of the divorce proceedings the husband paid support of $446.50 per month. The wife's testimony was that even with her own income and the support payment, her expenses exceeded the amount available and she incurred additional debt during the two-year pendency of the divorce proceedings.
Further, the trial court found that during almost all of the marriage, both parties held full-time jobs and neither party held an additional part-time job. However, beginning in 1989, the wife took on a part-time job (in addition to the full-time job) in order to increase the family income. The wife was continuing to work two jobs as of the final hearing. The trial court ruled that, considering the age of the wife and the parties' practice during most of the marriage, the permanent alimony award would be based on the assumption that the wife would continue full-time employment, but the wife would not be required to continue part-time employment. It appears reasonably clear that, based on the foregoing considerations, the trial court decided that a permanent alimony award of $1,000 per month was needed and appropriate. The amount is within the wide discretion afforded the trial court by the Canakaris decision.
The husband next challenges the amount and duration of the requirement that he cover the wife's future medical, psychiatric, and psychological counseling expenses which are reasonably required as a result of domestic abuse during the marriage. As we view the final judgment and the record, the trial court believed the wife's testimony that during the marriage, she was beaten four or five times per year. In 1983, she was beaten so badly that she required hospital treatment and reconstructive surgery. As a result, she has permanent facial nerve damage and no feeling on one side of her face. She has temporomandibular joint disorder and gets headaches and her jaw hurts when she chews. The husband admitted the 1983 beating, but denied the others. This conflict in testimony was resolved in favor of the wife.
The wife's expert psychologist testified about the wife's psychological condition as a result of domestic abuse. The psychologist recommended that the wife consult with a psychiatrist at least once monthly and that the wife should have individual therapy twice a week for at least a few years.
The trial court included in the final judgment the following provision:

*1108 22. The Husband shall be required to pay any presently outstanding and all reasonable future medical, psychological, psychiatric, counseling and medication expenses for care and treatment required by the Wife as a result of his egregious conduct which are not covered by her medical insurance and for those items which are covered, the Husband shall be responsible for any uncovered portions, including payment of any deductibles.
The husband argues first that there should be a dollar limit on the amount of his liability under this subdivision. He contends that some limitations must be established so as to keep this part of the judgment within his ability to pay. He suggests that if the wife were to decide to undertake daily treatment, for example, the expense would be such that the husband would be unable to pay it.
Both in the trial court and in this court, the wife has reiterated that this paragraph requires reimbursement for the uninsured portion of reasonable and necessary treatment. The wife states that under this provision, "reasonable" means the frequency recommended by the expert psychologist, and that the wife does not seek any frequency of treatment beyond what the expert psychologist recommended.[2] With that concession, the final judgment shall be interpreted accordingly.
The husband suggests that the provision for future medical expenses is unnecessary, given the testimony of the treating physician that the wife had reached maximum medical improvement. We disagree. The wife testified, and the court believed, that she continues to have difficulties with the face and jaw. The trial court was explicit that if further medical treatment is needed in the future which is attributable to the beating inflicted in 1983, the husband must pay for any expense not covered by insurance.
The husband requests that his obligation under paragraph 22 should terminate in the event that the wife remarries. The trial court refused to impose that limitation and we find no abuse of discretion in its ruling. It is true that, "[a]s a general rule, permanent periodical alimony is terminated upon the death of either spouse or the remarriage of the receiving spouse." Canakaris v. Canakaris, 382 So.2d at 1202 (citations omitted). In the usual case, a requirement that the paying spouse pay, or provide insurance for, the health expenses of the receiving spouse is properly viewed as support and, like permanent alimony, would terminate upon death or remarriage.
In the present case, however, paragraph 22 is intended to require the husband to pay expenses which the wife reasonably incurs as a result of the domestic abuse which the court found to have occurred during the course of the parties' marriage. This is in the nature of compensation for injuries rather than support. As stated in Hill v. Hill, 415 So.2d 20 (Fla.1982):
[W]e ... emphasize the authority of the trial judge in a dissolution proceeding to direct the offending spouse to pay the necessary medical expenses not covered by insurance and the judge's authority to consider any permanent injury, disfigurement, or loss of earning capacity caused by an intentional tort in establishing appropriate alimony under section 61.08, particularly that provision which provides "the court may consider any other factor necessary to do equity and justice between the parties."
Id. at 24 (emphasis added). Given that the purpose of such an award is to compensate the injured spouse for intentional torts committed during the marriage, we conclude that the trial court has the authority to direct that such payment obligation will survive the remarriage of the payee spouse.
The husband argues in substance that Hill has been undercut by the more recent decision in Waite v. Waite, 618 So.2d 1360 (Fla. 1993), which abolished the doctrine of interspousal immunity in Florida.[3] The husband contends that, to the extent that the wife seeks compensation for domestic abuse occurring *1109 during the parties' marriage, her remedy under Waite is to file a separate tort suit, and that such claims can no longer be entertained by the trial court in the context of a dissolution of marriage proceeding. Again, we disagree. The just-quoted portion of the Hill decision remains an accurate statement of the law, and provides authority for the equitable remedy fashioned in this case.
Finally, the husband also challenges the equitable distribution. We find no abuse of discretion.
Affirmed.
NOTES
[1] Section 61.08(2), Florida Statutes, provides:

(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
[2] If in the future the treating professionals recommend an increase in the frequency of therapy sessions, this issue can be revisited by the trial court.
[3] Waite overruled Hill on the issue of interspousal immunity. Hill adhered to the interspousal immunity doctrine. 415 So.2d 24. Waite abolished it. 618 So.2d at 1360-62.