446 So.2d 346 (1984)
John R. TUSSON
v.
The HERO LAND CO., Numa C. Hero, Numa C. Hero, Jr. and George A. Hero, Jr.
No. CA 0777.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1984.
Rehearing Denied March 21, 1984.
Writ Denied May 4, 1984.
*347 John M. Currier, New Orleans, for plaintiff-appellant.
Edmond H. Fitzmaurice, Jr., Covington, for intervenor-appellant.
Frank J. Peragine, James A. Burton, New Orleans, for defendant-appellee.
Before BYRNES, GARRISON and AUGUSTINE, JJ.
BYRNES, Judge.
This appeal involves a dispute over the ownership of a spoil bank formed by construction of a canal. The parties to the dispute are John R. Tusson, appellant, The Plaquemines Parish Commission Council [The Commission Council], intervenor-appellant, and Hero Lands Co., et al, [Hero], appellees. The facts surrounding this dispute are as follows:
*348 In 1952 the Federal Government expropriated a right of way or servitude for a drainage canal in Plaquemines Parish. The servitude consisted of a strip of land 310 feet wide, half of which was on land belonging to Tusson and the other half on land belonging to Hero. The expropriation order which created this servitude, and which governs the rights of the parties in this matter, provided for:
A perpetual right, servitude or easement to enter upon, dig, cut away and remove any or all or such of the hereinafter described tract of land as may be required at any time in the constructing, operating, improving and maintaining of a drainage canal, and to maintain such portion as cut away and removed and also the perpetual right, servitude or easement to enter upon, occupy and use such portion of said land not so cut away and removed as may be required for the deposit of dredged material or earth and water carrying same, the construction, operation, maintenance and improvement of roads, bridges and culverts, and for such other purposes as may be needful in the preservation maintenance of said drainage canal and appurtenant works, reserving, however, to the owner, his heirs and assigns, all such rights and privileges in said tract of land as may be used and enjoyed without interfering with or abridging the rights and easements hereby acquired, herein set forth, subject, however, to existing easements for public roads and highways, public utilities, railroads and pipelines.
Pursuant to this order the canal was dug by a private company under the supervision of the Army Corps of Engineers. Following the Corps' plans and specifications, the canal itself was constructed entirely on that part of the servitude which covered Tusson's land. The spoil which this excavation created was placed entirely within the servitude on Hero's land. The canal was so constructed that a 42 foot wide strip of Tusson's land was left between the edge of the canal and the edge of the spoil bank on Hero's side of the canal.
Over the years, control of the canal passed from the Corps of Engineers to the Jefferson-Plaquemines Drainage District and then to the Plaquemines Parish Commission Council. At some time during 1970-1971 Hero sold part of the spoil bank to third persons and used part of it for its own purposes. In response Tusson filed this suit, claiming ownership of the spoil and seeking either its return or damages equal to the value of that which was removed. The suit also sought a right of access across Hero's land to reach the strip of Tusson's land isolated by the canal and damages for a trespass which was alleged to have taken place when Hero cut a ditch across that strip into the canal. The Commission Council intervened, urging that the spoil belonged to the Parish and seeking damages for its removal by Hero.
The trial court ruled in favor of Hero, dismissing the claims of both Tusson and the Commission Council. The dismissal of the Commission Council was based on the court's interpretation of the expropriation order and a ruling of the Supreme Court in the case of Plaquemines Parish Commission Council v. Hero Land Co., 388 So.2d 790 (La.1980).
Although that case involved a conventional servitude rather than the legal servitude involved in this case; it nonetheless addressed the interpretation of such instruments. The court held that the rights of the parties are determined by the language of the instrument creating the servitude and that:
"Any limitations on the owners use [of his land] must be expressed in the servitude agreement." Plaquemines Parish Commission Council v. Hero Land Co., supra
We consider this to be the controlling principle in this case.
The contention of the Commission Council that it is the owner of the spoil created by excavation of the canal is not supported by the language of the expropriation order from which the Commission Council derives its rights. In that order it *349 is specifically provided that the taking authority has the right:
"To enter upon, dig, cut away and remove any or all or such of the hereinafter described tracts of land as may be required at any time in the constructing, operating, improving and maintaining of a drainage canal, and to maintain such portion as cut away and removed and also the perpetual right, servitude, or easement to enter upon, occupy and use such portion of said land not so cut away and removed as may be required for the deposit of dredged material or earth and water carry the same...". (Emphasis added)
The Commission Council argues that the clause providing for the right "to maintain such portion [of the expropriated land] as cut away and removed", grants ownership of the spoil to the Parish. We do not agree. Maintenance is not the same as ownership. While the right to "maintain" the spoil bank implies some control it does not confer ownership. The order confers a right to use the expropriated land for construction and maintenance of a drainage canal and the deposit of spoil. It does not convey ownership of either the land itself or the spoil which excavation of the canal created.
Our belief that the expropriation order did not vest ownership of the land in the expropriating authority is reinforced by the circumstance surrounding the original expropriation proceedings. In that proceeding numerous tracts of land were expropriated as part of a massive waterway improvement project. Some tracts were taken in full ownership while others were only subjected to a servitude. It is clear from the language of the expropriation order that the Tusson-Hero tract was only subjected to a servitude.
Predial servitudes are strictly construed, and any doubts as to the extent or exercise of rights created by such servitudes should be resolved in favor of the servient estate. CC Art. 753[1], Plaquemines Parish Commission Council v. Hero, supra. Applying this principle to the facts of this case we find that the Plaquemines Parish Commission Council has no claim to ownership of the spoil and conclude that the trial judge was correct in dismissing the Commission Council's claim.
We next address the claim of Tusson to ownership of the spoil. Once again the language of the expropriation order is the basic expression of the rights of the parties. Under that order Tusson was compensated for the digging, cutting away and removal of whatever land was required to construct the canal. Removal implies a permanent separation of the spoil from Tusson's land. If Tusson did not feel he was adequately compensated for this loss his remedy was to contest the amount received in the expropriation proceeding. In these circumstances we feel that Tusson's right to claim ownership of the spoil ceased when it was removed from his property in accordance with the expropriation order. The fact that the spoil was stored within the servitude has no relevance to Tusson's claim of ownership. Tusson had already been compensated for loss of the spoil and cannot now seek additional compensation from Hero.
We now address the claim of Hero to use of the spoil. When the expropriating authority placed the spoil from the canal on Hero's land it was exercising the right which it acquired under the expropriation order to:
use such portions of said land not so cut away and removed as may be required for the deposit of dredged material or earth ...
By the terms of the order Hero was obliged to permit this use of its property and was compensated for this inconvenience. However, the order also reserved to the landowner;

*350 All such rights and privileges in said tract of land as may be used and enjoyed without interfering with or abridging the rights and easement hereby acquired ...
There has been no showing that Hero's use of the spoil interfered in any way with the servitude created by the expropriation order. The Commission Council points out that, should they require the spoil in the future, it would not be there. This, they argue, constitutes interference with their rights. We find this allegation speculative and unsupported by any evidence that the Commission Council actually needed this spoil to maintain the canal. Absent such a showing, we cannot say that Hero's use of the spoil interfered with the Commission Council's rights. It must be remembered that in cases involving predial servitudes any limitation on the servient estate owner's use of his property is strictly construed against the dominent estate, in this case the Commission Council. CC Art. 753.
As previously discussed, Tusson was compensated for the removal of the spoil from his land and the expropriating authority retained that right to store the spoil and use it for the maintenance and operation of the canal. However, the right of both Tusson and Hero to full use of their property, to the extent that it did not interfere with the servitude, was expressly reserved.
We have determined that Hero acquired the right to use the spoil by virtue of its position as owner of the servient estate burdened with the servitude established by the expropriation order.
When a predial servitude is established, the owner of the servient estate retains all the rights of ownership which he may exercise without interfering with the operation of the servitude. C.C. Art. 753, LaSalle Properties v. Louisiana Power and Light, 391 So.2d 574 (La.App. 4th Cir. 1980). The language of servitude instrument is strictly construed and any doubts are resolved in favor of free use of the servient estate. Arcuri v. Cali, 244 So.2d 309 (La.App. 4th Cir.1971).
Professor Yiannopoulos in his treatise on Louisiana Property Law concludes that the owner of the servient estate may "take dirt from excavations on the right of way of a servitude of passage, and he may use for his own needs the works and constructions made for the exercise of the servitude". Yiannopoulos, La.Civil Law Treatise Vol. 4, Sec. 158, pgs. 426-9. This right is of course limited by the servient estate owner's duty not to interfere with the exercise of the servitude by the dominant estate.
Because it was not established that Hero's use of the spoil interfered with the exercise of the servitude, we conclude that Hero's actions were permissable and did not give rise to a claim for damages by either Tusson or the Commission Council. The trial judge reached this result, but for reasons relating to acquisitive prescription. We do not agree with his reasoning and base out ruling on an interpretation of the exproporiation order creating the servitude and the Civil Code Articles applicable to the relationships which such servitudes create.
Tusson next asserts that he is entitled to a right of passage across Hero's land to reach that part of his land which is isolated by the canal. We do not agree.
He alleges that the canal isolates a 42 foot wide strip of his land. However, he retains ownership of the entire tract, subject only to the servitude. The question posed is whether this servitude can be said to enclose Tusson's land so that the law would impose on Hero a duty to provide him with a right of passage.
After careful consideration we have concluded that Tusson has not met his burden of proving that his lands are enclosed or that the route he seeks is the shortest one available. Generally speaking an estate is considered enclosed within the meaning of C.C. Art. 699 when it is shut off from access to public roads because it is entirely surrounded by other lands. Finn v. Eoff, 368 So.2d 199 (La.App.1979). English Realty Co. v. Meyer, 228 La. 423, 82 So.2d 698 (1955). However, it has been held that enclosure by virtue of an expropriation of property for an interstate highway *351 can also give rise to an action for a right of passage. Rockholt v. Keaty, 256 La. 629, 237 So.2d 663 (1970). However, Rockholt also held that the passage must be the shortest, most direct, and most feasible route available which would give the enclosed estate access to a public road. Rockholt, supra at 688.
In Rockholt the plaintiff sought a right of passage over neighboring land to reach other lands belonging to him which abutted a public road. However, there was no road on the second tract which would have given plaintiff the access he sought.
While holding that the presence of the interstate highway enclosed the plaintiff's land in the sense intended by C.C. Art. 699, the Supreme Court denied his request for a right of passage based on the conclusion that there were other more direct routes available to him. The court reached this conclusion not withstanding the plaintiff's allegation that certain zoning restrictions would prevent him from using the shorter routes. The court found that, "These restrictions alone would not be controlling of a land owner's right to obtain passage from enclosed land across neighboring property." Rockholt, supra at 668.
In the present case we conclude that the most direct access to that portion of Tusson's land isolated by the canal is by a bridge across that canal. Moreover, until Tusson has been judicially denied that right to build a bridge over the canal we cannot say that his lands are enclosed. In Rockholt, supra, full ownership of the land underlying the interstate highway was taken. In addition, both federal and state law absolutely prohibited access to such highways. In this case Tusson retained ownership of the land under the canal. Moreover, evidence was introduced at trial showing that Hero had had received permission to build a bridge across the same canal so that it might gain access to lands on both sides of the canal. Thus, there appears to be no absolute prohibition against passage over the public right of way as was the case in Rockholt. It seems both inequitable and premature to order Hero, who did not create this situation, to provide Tusson with a right of passage when he has not tested his right to build a bridge over the canal by legal process.
Tusson has alleged that the Commission Council refused him permission to build such a bridge. We do not feel that this refusal alone entitles Tusson to a right of passage over Hero's land. If the expropriation order had been judicially interpreted to preclude construction of a bridge we might feel differently. In such a circumstance Tusson would truly appear to be denied access to his lands. However, based on the record before us, it appears that Tusson has not asserted his rights under the order to a sufficient extent to justify imposition of a right of passage on Hero. Tusson's remedy in this respect is to seek interpretation of the expropriation order to determine if he may legally construct a bridge across the canal. This is the shortest most direct access to his enclosed lands. Should he be unsuccessful in his efforts, Tusson would still have the right to passage over Hero's land.
Finally, Tusson asserts that he is entitled to damages as a result of Hero's alleged construction of a ditch which connects the Berry Canal with the canal at issue here. Tusson contends that this waterway was cut across the forty two feet of his land on Hero's side of the canal and that he is entitled to damages for trespass and removal of the soil. We do not agree.
The record indicates that the Berry Canal was connected to the Plaquemines Drainage Canal (the canal at issue here) in the 1950's by or on behalf of the Corps of Engineers as part of a comprehensive drainage plan for the area.
Hero admitted to dredging this passage once or twice since 1952 but did not know if the spoil from that operation was used by his company. It also appears from the record that the Commission Council had authorized Hero to maintain that part of the Berry Canal within the confines of its property. If Hero was acting as agent for the authority with jurisdiction over the Berry *352 Canal when it in dredged the channel then it appears that no trespass took place. No evidence was introduced to contradict Hero's assertion that it was acting under authority of the Commission Council. In the absence of further proof that a trespass took place we cannot say the trial judge erred in dismissing this claim.
As to Tusson's claim that the spoil created by Hero's dredging operations was wrongfully taken by Hero, we find that there was not sufficient evidence introduced at trial to establish where that particular dirt was placed or what was done with it. Under these circumstances we see no error in the trial judge's action.
For the foregoing reasons we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The Civil Code Articles referred to throughout this opinion are those in effect in 1971, when suit was filed.