552 So.2d 1052 (1989)
Edgar Lawrence BROWN and Donald Gregory Brown
v.
Floerl C. ROUGON, Rosemary Rummler, Jens Rummler and Sheriff Preston Chustz.
No. CA 88 1359.
Court of Appeal of Louisiana, First Circuit.
November 15, 1989.
Writ Denied February 16, 1990.
*1053 Benjamin L. Johnson, Donaldsonville, for Edgar and Donald Brown.
Rosaline Chustz Parks, Parks & Parks, New Roads, Counsel for Sheriff Preston Chustz.
David M. Ellison, Ellison & Smith, Baton Rouge, Counsel for Floerl C. Rougon, Rosemary Rummler and Jens Rummler.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This suit by two commercial fishermen cumulates actions seeking (1) recognition that a drainage canal constructed over private property with public funds is subject to public use, (2) damages for false arrest under La.C.C. art. 2315 and violation of rights under 42 U.S.C.A. 1983, and (3) an injunction to protect their right to use the canal in the future. Made defendants were the owners of the land through which the canal passes and the parish sheriff whose deputies arrested the fishermen when they used the canal. At the conclusion of the trial, the trial court ruled from the bench that the sheriff's deputies had probable cause to arrest the fishermen and dismissed the case against the sheriff. The *1054 trial court then took the case under advisement and subsequently ruled that the "right of way" instrument executed by the landowners' predecessors in title only conveyed a predial servitude for drainage purposes in favor of the parish police jury (public), the instrument did not convey a general right of use (including navigation or fishing) in favor of the public, and the fishermen were not entitled to relief against the landowners. Judgment was signed dismissing the fishermen's petition at their cost. The fishermen took this suspensive appeal.

FACTS
False River is an oxbow lake located in Pointe Coupee Parish, Louisiana. Prior to 1947, properties bordering False River were subject to flooding because rain water drained into False River and there was inadequate drainage to convey this water out of it. In 1947 the Pointe Coupee Parish Police Jury (Parish) and the State of Louisiana through its Department of Public Works (State), as part of state and parish drainage programs, determined to construct a drainage canal to reduce flooding on properties bordering False River. Specifically, the purpose of this canal was to provide an outfall drainage or relief drainage to False River to reduce the surcharge elevations on False River. The State provided the funding and the engineering for the project; the Parish agreed to provide perpetual maintenance for the project and secured the necessary "right-of-way".
On February 3, 1947, Itha Rougon, Ida Rougon and Henry A. Rougon executed an instrument entitled "RIGHT-OF-WAY-DEED" which granted a "drainage right of way for construction, maintenance and inprovement [sic] of drainage facilities through and across our property ..." (Emphasis added). This right-of-way extended from False River in a south-southwesterly direction for approximately 3.9 miles to Bayou Grosse Tete. This right-of-way agreement further provided, in pertinent part, as follows:
This right of way is granted for the purpose of permitting the Parish of Pointe Coupee to construct drainage canals, which drainage canals are to be constructed in accordane [sic] with the map filed with the Police Jury of Pointe Coupee Parish, in a contract between said Police Jury and the Department of Public Works. Owners reserve all Mineral rights, Oil & Gas, and Timber on Right of ways.
. . . . .
The grantor waives and abandons all claims for damages on account of the exercise and privilege herein granted, and the privilege is specially granted for the placing of all dirt removed from said drainage canal and spoil soil may be placed on either side or bank of said canal. BRIDGE CONSTRUCTED the property of the Parish and Cost of Upkeep and Maintenance shall be that of the Parish of Pointe Coupee. (Emphasis added)
Although the right-of-way agreement referred to this canal as the False River-Bayou Grosse Tete Drainage Canal, it was called the Rougon Canal (Canal) by the witnesses at the trial.
The Canal was built on the right-of-way above described. It is approximately 15 to 20 feet in depth and ranges in width at the top from approximately 65 to 100 feet and at the bottom from approximately 20 to 25 feet. A control structure was built where the Canal exits False River and runs under Louisiana Highway 1. This control structure maintains the level of the water in False River at 15 feet mean sea level (MSL). Thus, no water leaves False River to flow through the Canal unless the water level in False River exceeds 15 feet MSL. The evidence indicated that on occasion the water in False River reaches a height of 21 feet MSL. After the water passes over the control structure, it travels under Louisiana Highway 1 through three 8 foot square (box) culverts. The elevation of the Canal's bottom at the culverts is 9 feet MSL; the elevation of the Canal's bottom where it enters Bayou Grosse Tete is 5 feet MSL. When the water is high in False River and running over the control structure, boats can travel up the Canal from Bayou Grosse *1055 Tete to the culverts under Louisiana Highway 1. When the water is low in False River (and thus low in the Canal) boats cannot navigate up the Canal. The testimony given at the trial indicated that boats could not travel in the canal for between 4 and 10 months per year. No natural or artificial navigation or drainage channel was replaced by the construction of the Canal.
Over the years, the Rougon family implemented a policy of prohibiting navigation in the Canal or fishing without their consent. Persons using boats in the Canal were asked to leave, as were persons fishing from the banks without permission. Sheriff Preston Chustz of Pointe Coupee Parish received many complaints from the Rougon family about persons using the Canal without permission. He would send deputies out who asked the person or persons to leave, and they usually did. Sheriff Chustz had been advised by the Rougon family and by Sam Cashio, who at the time was the District Attorney for the 18th Judicial District, that the Canal was private (insofar as navigation and fishing were concerned).
During periods of high water between November and March of each year, shad fish in great numbers congregate in the waters rushing out of the culverts in the Canal. These shad can be caught in dip nets and sold commercially as crawfish bait. On March 15, 1986, Edgar L. Brown and his cousin, Donald G. Brown, launched their 14 foot boat, powered by a 25 horsepower outboard motor, on Bayou Grosse Tete and traveled up the Canal to fish shad at the culverts. One man operated the motor to keep the boat positioned in the current, and the other man dipped with a net for shad. On previous occasions the Browns had caught as much as 6,000 pounds of shad per day. On this particular day the Browns were observed in the Canal by Mrs. Floerl C. Rougon, who telephoned in a complaint to the Sheriff's office. Deputies were dispatched to the Canal, and they arrested the Browns for trespassing.
On January 26, 1987, Yens P. Rummler, the husband of Rosemary Rougon Rummler, (who lived next to the Canal) saw the Browns fishing shad in the Canal. He asked them to leave but they did not. He made a radio call to his wife and asked her to notify the Sheriff's office, which she did. Deputy Brett Robillard was dispatched to the Canal to investigate the complaint. He asked the Browns to leave and they refused. Robillard then talked to Rummler and Rummler signed a complaint. Robillard went back to the culverts and arrested the Browns.
This suit was filed on January 26, 1988.

LIABILITY OF THE SHERIFF

(Assignment of error 2)
The trial court dismissed the claims against the Sheriff because it found he had probable cause to arrest the Browns. The Browns contend the trial court erred by dismissing their demands against Sheriff Chustz. The Browns assert that because they had a legal right to enter and fish the Rougon Canal, they were illegally arrested by the Sheriff on two occasions, and, thus, have causes of action for damages for false arrest and violation of 42 U.S.C.A. § 1983.
In O'Connor v. Hammond Police Department, 439 So.2d 558, 560 (La.App. 1st Cir.1983) appears the following:
The tort of false imprisonment has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention.... Unlawful detention is restraint without color of legal authority.... Thus, if an arrest is made either without any legal process or warrant or under a warrant void and null upon its face, a false imprisonment has occurred.... However, if a person is arrested pursuant to statutory authority, there is no liability for damages for false imprisonment.... The burden is on a plaintiff to prove that the arrest was made without color of legal authority. (Emphasis added)
La.C.Cr.P. art. 213(1) and (3) provide as follows:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and *1056 if the arrest is for a misdemeanor, it must be made immediately or on close pursuit;
. . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer;...
In State v. Shepherd, 470 So.2d 608, 611-612 (La.App. 1st Cir.1985) appears the following:
An arrest is defined in La.C.Cr.P. art 201 as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
An arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of an accused, rather than at the precise time an officer tells an accused he is under arrest.
A peace officer may lawfully arrest a person without a warrant when he has reasonable (probable) cause to believe that the person to be arrested has committed an offense. La.C.Cr.P. art. 213. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act.
The evidence shows that the Sheriff had been advised by the District Attorney and the Rougon family that the public did not have a right to use the Canal for boating or fishing. The Sheriff had received numerous complaints concerning this. On the date of each incident the Sheriff's office was advised by a member of the Rougon family that the Browns were unlawfully using the Canal, and the use of the Canal by the Browns was confirmed by a deputy dispatched to the scene. In this factual posture, the trial court was not clearly wrong in finding as fact that the Sheriff had probable cause to arrest the Browns on each occasion. Because the Sheriff had probable cause pursuant to La.C.Cr.P. art. 213 to arrest the Browns, he acted pursuant to statutory authority, and there is no liability for false arrest (imprisonment).
Because the Sheriff had probable cause to arrest the Browns under La.C. Cr.P. art. 213, and because the Sheriff's actions were not such as to "shock the conscience", the Browns have failed to prove a cause of action under 42 U.S.C.A. § 1983. Cf. Ross v. Sheriff of Lafourche Parish, 479 So.2d 506 (La.App. 1st Cir. 1985).
This assignment of error is without merit.

PUBLIC'S RIGHT TO USE THE CANAL

(Assignments of error 1 and 3)
The Browns contend the trial court erred in limiting the public's use of the Canal to drainage only and by rejecting their demands for injunctive relief. The Browns assert the Canal is subject to public use because (1) public funds were used to construct it, (2) running water courses down the Canal, and running water is a public thing subject to public use, and (3) the Canal is navigable and the fact of navigability confers a right of public use.
The right-of-way deed executed by the Rougon family is a written contract and subject to the general rules for the interpretation of contracts. In Myers v. Myers, 532 So.2d 490, 494 (La.App. 1st Cir.1988) appears the following:[1]
*1057 Contracts have the effect of law on the parties thereto and must be performed in good faith. La.C.C. art. 1983. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La.C.C. art. 2046. Conversely, when the terms of a contract are susceptible to more than one interpretation, it is ambiguous and parol evidence may be used to show the true intent of the parties and various rules of interpretation become applicable. La. C.C. arts. 2045 et seq.; Dixie Campers, Inc. v. Vesely Company, 398 So.2d 1087 (La.1981). Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La.C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. C.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La.C.C. art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.C.C. art. 2053. In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation; however, if the doubt rises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor. La.C.C. art. 2057.
The trial court ruled that the right-of-way deed "granted to the Pointe Coupee Police Jury ... a predial servitude."[2] The Browns have not contested this ruling in an assignment of error.[3] Prior to executing the deed, the Rougon family, as owners of the property, had the exclusive authority to use, enjoy and dispose of their property within the limits and under the conditions established by law. La.C.C. art. 477. The right-of-way deed created a voluntary or conventional servitude by juridical act and effected a dismemberment of the Rougon family's ownership rights. La.C.C. art. 654. Thus, the deed is also subject to special rules of construction applicable to servitudes. La.C.C. art. 730[4] provides as follows:

*1058 Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate.
The reason for this rule of interpretation is set forth in Comment (b) for La.C.C. art. 730 as follows:
It is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved in favorem libertatis.... The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by law."... The rule that the proper interpretation of an ambiguous instrument is that which least restricts the ownership of the land has been applied by Louisiana courts in a variety of contexts....
Finally, and most importantly, when a servitude is created by contract, its use and extent is regulated by the title by which it is created. La.C.C. art. 697. Any limitation on a landowner's use of the property subject to a servitude agreement must be expressed in the agreement. Plaquemines Parish Commission Council v. Hero Lands Company, 388 So.2d 790 (La. 1980); Tusson v. Hero Land Co., 446 So.2d 346 (La.App. 4th Cir.) writ denied, 449 So.2d 1359 (La.1984). Courts must give effect to the terms by which servitudes are created, unless they are contrary to good public order. Ogden v. Bankston, 398 So.2d 1037 (La.1981); Dautreuil v. Degeyter, 436 So.2d 614 (La.App. 3rd Cir.1983).
The language of the deed is clear and unambiguous. It grants servitudes of drain, spoil (dirt) deposit and passage for maintenance. It does not grant servitudes for navigation, recreation or fishing. Because the Rougon family's navigation, recreation or fishing rights were not limited or conveyed in the deed, these rights have been retained by the Rougons. The trial court's ruling on this issue is correct.
The Browns assert that the running water coursing from False River down the Canal to Bayou Grosse Tete is a public thing which is subject to public use for fishing and navigation, citing La.C.C. arts. 450, 452, 657 and 658 and Chaney v. State Mineral Board, 444 So.2d 105 (La.1983). The authorities cited must be interpreted in pari materia with La.R.S. 38:219(8), which provides as follows:
§ 219. Obstruction of drainage channels prohibited.
No person shall:
. . . . .
(8) Use the channels for transportation or navigation except under authority of and agreement with the levee or drainage districts;
. . . . .
Whoever violates this Section shall be fined not less than twenty-five dollars nor more than five hundred dollars or imprisoned for not less than thirty days nor more than sixty days, or both.
La.R.S. 38:219 was interpreted in Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981). In Matherne, a landowner constructed ditches which drained into an existing Parish drainage system and caused prolonged flooding in the area drained. The Parish obtained an injunction authorizing it to block the new ditches to prevent further drainage into the Parish drainage system. The Louisiana Supreme Court ruled that the Parish was entitled to this injunction with the following rationale:
The police jury in this case has a right, which the law has recognized, to be immune from damage by Matherne's actions in overburdening the natural servitude of drain. The governing body is authorized to adopt rules and regulations for preserving the efficiency of channels within its drainage district. La.R.S. 38:113. In aid of this local government power, the legislature also enacted criminal sanctions prohibiting obstruction of drainage channels, La.R.S. 38:219, or *1059 "[d]rain[age] into channels by natural or artificial inlets except under regulations prescribed by the district, ..." La.R.S. 38:219(6). By analogy to these criminal statutes we conclude that the police jury enjoys a substantive civil right to be immune from damage to its public works project by excessive, unlawful drainage into its system.... As we noted earlier in this opinion, these statutes cannot authorize the police jury to take or damage property without just compensation. The regulation or prohibition of drainage into a public system that is not authorized by a natural servitude or other legal right, however, does not constitute a taking or damaging of property. Matherne, 405 So.2d at 318-319.
Matherne relied on La.R.S. 38:219(6), instead of La.R.S. 38:219(8) which is applicable herein. However, the same analytical process is applicable herein by analogy, and Pointe Coupee Parish enjoys a substantive civil right to be immune from damage to its drainage project which may be caused by transportation or navigation in its drainage channels.[5] Yens Rummler gave the following testimony at the trial:
Q Uh-hum. Okay, and you indicated, you giveyou do give some people permission to fish?
A Off the banks; yes, sir.
Q Okay, but you will not allow the people that come by boat to stay?
A No, sir, because they actually contribute, while the water is high, to the erosion of this canal
Q Uh-hum.
A and it's eventually going to create problems in the drainage of this canal.
There is no evidence of record to show that the Browns had the permission of the Parish or the Rougon family to navigate on the waters of the Canal. Further, Lawrence Doucet, a professional engineer who acted as a right-of-way agent for the Parish, testified that the Canal had not been declared subject to navigation pursuant to La.R.S. 38:315.[6] The Chaney case is distinguishable from the instant case because it involved a natural servitude of drainage in a river, rather than an artificial drainage canal created by a conventional servitude agreement. Thus, the fact that running water courses through the Canal does not per se give the Browns the right to navigate or fish it.
The Browns contend that because the Canal was navigable[7] they have a right to use it for fishing purposes. For the purpose of disposing of this argument, we *1060 will assume (but not decide) that the Canal is navigable; however, the fact of navigability is not dispositive. For example, navigable canals constructed with private funds on private property remain private things which are not subject to public use, unless they destroy the navigability of surrounding natural waterways to such an extent that the new waterway system serves as a substitute for the preexisting natural system. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981); Seligman v. Tschirn, 394 So.2d 1326 (La.App. 1st Cir. 1981); National Audubon Society v. White, 302 So.2d 660 (La.App. 3rd Cir. 1974), writ denied, 305 So.2d 542 (La.1975); A. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property, § 47, 139-142. The Rougon family did not convey a servitude for navigation to the public (Parish); they only granted a drainage servitude with spoil and maintenance rights. Further, navigation on the Canal is restricted by La.R.S. 38:219(8) and 38:315. Thus, the fact that the Canal may be navigable in fact does not give navigation rights to the Browns, or other members of the public.
The Browns contend they have a right to navigate and use the Canal because public money was used in the construction and maintenance of the Canal, citing Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (La.1972) and D'Albora v. Garcia, 144 So.2d 911 (La.App. 4th Cir. 1962).[8] This issue was addressed in State, Dept. of Highways v. Jeanerette Lumber & Shingle Co., Ltd., 350 So.2d 847 (La. 1977). In that case the State filed suit to expropriate a permanent right-of-way 400 feet wide so it could excavate an access canal for the flotation of heavy equipment used in building a highway. Ultimately the trial court authorized the State to take a permanent servitude for the sole use of the State for constructing, maintaining and repairing the highway; the access canal was declared not a general public way available for use by the public; the landowner had full access to the access canal subject to the State's limited rights; and the portion of the 400 foot servitude not covered by the access canal could only be used by the State for maintenance, repair and dredging of the canal. Thus, although the access canal was navigable and built with public funds (and undoubtedly had running water in it), the public in general could not use it for navigation and fishing. The Louisiana Supreme Court (on rehearing) affirmed this judgment. Thus, the use of public funds in the construction of a navigable canal does not necessarily create a public right to use the canal. The essence of the Jeanerette holding is that the judgment of the trial court gave the State only those rights of the landowner that were necessary for highway purposes. By analogy, in the instant case, the Rougon family only gave the Parish those portions of their ownership rights as were necessary to build and maintain a drainage canal. The use of public funds does not convey greater rights than those contracted for by the parties. To hold otherwise would allow the taking of private ownership rights without the consent of the owner and without just compensation in violation of our State and United States constitutions.
These assignments of error are without merit.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed at the appellants' costs.
AFFIRMED.
NOTES
[1] This opinion refers to the Civil Code articles by their current numbers and not by those numbers which were in effect in 1947 when the contract was executed. There appears to be no substantive difference between the present Civil Code articles used herein and the law and jurisprudence in effect in 1947.
[2] A predial servitude is a charge on a servient estate for the benefit of a dominent estate. La. C.C. art. 646. In brief and in oral argument the Sheriff and the Rougon family assert the lands bordering the False River are the dominent estates. La.C.C. arts. 648, 724 and 735. It could be argued that the right-of-way deed constituted a dedication to public use. La.C.C. art. 455; A. Yiannopoulos, 2 Louisiana Civil Law Treatise, Property §§ 58-61, 178-186 (2d ed. 1980). However, even if the deed conveyed a dedication to public use instead of a predial servitude, the result would be the same because the rights and obligations of the parties would be determined by an "analogous application of the rules governing servitudes." A. Yiannopoulos, supra, § 59, 182.
[3] In brief the Browns assert the following:

The articles of the Civil Code dealing with the subject of predial servitude have no application or pertinence to our issues. The issues, before this court, cannot be resolved by deciding a question of establishment, existence or non existence of a predial servitude. The issues does [sic] not concern a dispute or controversy between the owners of estates which may be the subject of a predial servitude. The issues, before this court, does [sic] not effect, adversely or otherwise, the predial servitude (i.e. right of drain) if, in fact, a predial servitude exist [sic].
[4] La.C.C. art. 730 was preceded by La.C.C. art. 753 (1870) which provided as follows:

Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected.
[5] If navigation causes erosion in a drainage channel, and this erosion reduces the efficiency of the channel as a drain, then it would seem that using a canal for both navigation and drainage is not a good policy. Further, drainage channels (ditches and canals) exist in urban, as well as rural settings. Although running water courses through these channels and they are navigable, there may be valid policy reasons (for example, tort liability and/or public health) to limit public use of such channels.
[6] La.R.S. 38:315 and 38:316 were enacted by Acts 1985, No. 785, effective July 22, 1985, and provide as follows:

§ 315. Dedication of artificial waterways as public navigable waterways; approval
Wherever there presently exists or may hereafter be created within the territorial limits of any levee district or levee and drainage district in the state of Louisiana, except in the parish of Orleans, any canal or other artificial waterway created by any levee district or levee and drainage district for the purpose of constructing a levee or other public work and where said canal or other artificial waterway is navigable in fact and connects with or enters into any lake, river, stream, bayou, or other navigable waters, the governing authority of said levee district or levee and drainage district shall have the authority, with the approval of the office of public works of the Department of Transportation and Development and with the concurrence of the U.S. district engineer, to dedicate and declare said canal or other artificial waterway, in whole or in part, as a waterway subject to the free and unrestricted navigation by the public; however, nothing herein shall be construed as authorizing the taking of private property, except as now provided by the constitution and laws of this state.
§ 316. Ratification of prior proceedings
Any proceedings taken by the governing authority of any levee district or levee and drainage district in conformity with the requirements set forth in R.S. 38:315 prior to August 1, 1985, are hereby approved, ratified, and confirmed.
[7] The parties disputed the factual question of the navigability of the Canal in the trial court and in this court. The trial court reached its decision without ruling on this issue.
[8] Discon involved a canal dedicated for navigation. We are not bound to follow D'Albora.