# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0325

## MELINDA A. CARSON AND KERRY L. CARSON

## VERSUS

## ESTATE OF ARCHIE FAYE M. ADAMS

Judgment Rendered: ___DEC 1 7 2025___

Appealed from the
21st Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket No. 20230001985

The Honorable Erika W. Sledge, Judge Presiding

James L. Bradford III
D. Stephen Brouillette, Jr.
Lauren A. Williams
Madisonville, Louisiana

Counsel for Plaintiffs/Appellants,
Melinda A. Carson and Kerry L.
Carson

Russell C. Monroe
Ponchatoula, Louisiana

Counsel for Defendant/Appellee,
Corrie Adams

Alexis L. Guillot
Hammond, Louisiana

BEFORE: MILLER, EDWARDS, AND FIELDS, JJ.

**MILLER, J.**

This matter is before us on appeal by plaintiffs, Melinda A. Carson and Kerry L. Carson, from a judgment of the trial court maintaining a peremptory exception of no cause of action in favor of defendant, Corrie Adams.

The issue before us is whether the plaintiffs/property owners have stated a cause of action seeking a servitude of passage pursuant to Louisiana Civil Code article 689 across land that abuts their property to the south, where the northern portion of their tract of land has access to a public road but where access to the southern portion requires them to cross a creek dividing the property.

For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June of 2023, Melinda A. Carson and Kerry L. Carson ("the Carsons") filed a petition for servitude of passage, naming the Estate of Archie Faye M. Adams ("the Estate") as defendant. The Carsons alleged they own property ("the Carson property") that abuts property owned by the Estate ("the Adams property"). The municipal addresses of the Carson property and the Adams property are both on Traylors Trail Road, which winds through Tangipahoa Parish near Robert, Louisiana. The Carsons further alleged their property is divided into two sections by Washley Creek, and although the northern portion of the Carson property has access to a public road, i.e., Traylors Trail Road, the southern portion does not have access to a public road because a public bridge on Traylors Trail Road, which crossed over Washley Creek, "was destroyed/failed and … Tangipahoa Parish elected not to rebuild the bridge, and … ceased all maintenance of Traylors Trail Road south of Washley Creek." The Carsons thus alleged that the southern portion of their property was "landlocked" with no access to a public road. The Carsons

2

prayed for a servitude of passage across the Adams property[1] pursuant to La. C.C. art. 689, in order to obtain access to the southern portion of their property, which they described as "landlocked property." The Carsons annexed Exhibits A, B, and C to the petition, which included a cash deed of sale to Archie Faye M. Adams, the Tangipahoa Tax Assessor GIS Map of the properties at issue, and surveys of the properties. The Carsons alleged that a succession had never been opened, no succession representative had been appointed, the heirs and/or legatees of Archie Faye M. Adams had not been judicially determined, and no one had been judicially sent into possession of the Adams property. The Carsons thus requested that an attorney be appointed to represent the Estate in these proceedings pursuant to La. C.C.P. art. 5091(A)(1)(c).[2]

In March of 2024, the Carsons filed a first amending petition for servitude of passage naming the granddaughter of Archie Faye M. Adams, Corrie Adams, as a defendant, and alleging that she owned the Adams property.[3] The amending petition annexed the same documents as the original petition.

---

[1]The location of the passage sought was the same passage south of Washley Creek bridge that they allege was used prior to the destruction of the bridge. The Carsons alternatively prayed for other feasible access to the southern portion of their property.

[2]Louisiana Code of Civil Procedure article 5091(A)(1)(c) provides that "[t]he court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when ... [i]t has jurisdiction over the person or property of the defendant ... and the defendant is ... [d]eceased and no succession representative has been appointed."

[3]The trial court appointed Alexis L. Guillot as the attorney ad hoc to represent the Estate. Ms. Guillot filed a note of evidence indicating that, following a published search, the heirs of the Estate were identified as Corrie Adams and Archie Faye M. Adams' two sisters, Doris Mason and Tammy Dupree. Ms. Guillot further averred that a Small Succession Affidavit had been executed, filed, and recorded in the conveyance records of Tangipahoa Parish under Book 1649, Page 120. Ms. Guillot indicated that she reviewed the Small Succession Affidavit, which provided an exchange of three properties owned by Archie Faye M. Adams that appear to have been "divided between Ms. Dupree, Ms. Mason, and Ms. Adams."

The Small Succession Affidavit is not found in the record before us and thus it is not clear whether each of the three heirs owns one of the three properties in whole or all three properties indivision. In any event, Ms. Adams is alleged to be the owner of the Adams property herein and for purposes of the exception of no cause of action, we will accept this allegation as true. In the event, however, that Ms. Dupree and Ms. Mason co-own the Adams property, we note that the exception of nonjoinder of indispensable parties may be raised at any time or even noticed by the trial or appellate court on its own motion. See La. C.C.P. arts. 641, 645, 927, 928; City of St. Gabriel v. Hebert, 2007-0039 (La. App. 1st Cir. 11/2/07), 2007 WL 3228112, *2 (unpublished).

In April of 2024, Ms. Adams filed an exception of no cause of action.[4] She contended the Carsons stated no cause of action because, based on the alleged facts (i.e., specifically, they own one single tract of land that already has access to a public road), their property is not "land-locked" or enclosed within the meaning of La. C.C. art. 689, and they are not entitled to relief.

After a hearing on the exception, the trial court issued written reasons for judgment on July 22, 2024, maintaining the exception and concluding that the Carsons' petition for servitude of passage pursuant to La. C.C. art. 689 failed to allege that the Carsons owned an enclosed estate where it indicated that the northern portion of the Carson property had access to a public highway. On August 18, 2024, the trial court signed a judgment, which maintained the exception but did not dismiss any claims.

The Carsons then filed an *ex parte* motion for leave to file a second amended petition for servitude of passage pursuant to La. C.C.P. art. 1151 because no answer had been filed, which was granted by the trial court. In that petition, the Carsons restated the allegations from the earlier petitions and additionally alleged that "[i]t is not reasonably feasible to build a bridge over Washley Creek in order to gain access to the southern portion of the Carson [p]roperty which is therefore land-locked for purposes of Louisiana Civil Code art. 689." The second amended petition referred to Exhibits A, B, and C, which were attached to the original and first amending petition.

In response to the second amended petition, Ms. Adams re-urged the exception of no cause of action.[5] Ms. Adams argued as follows, in pertinent part:

---

[4]Ms. Adams also raised the objection of prescription, contending that since the parish bridge that went across the Carson property was destroyed, the parish ceased maintaining it in the mid-1980s, and thus any alleged right of way was barred by ten years' liberative prescription. The trial court ultimately declared this exception moot pursuant to the parties' stipulation.

[5]Ms. Adams also raised the objection of res judicata, which was subsequently overruled.

The second supplemental petition attempts to create a second bite at the apple by alleging it is not "reasonably feasible" to build a bridge over Washley Creek …, and therefore, it is landlocked. Feasibility is not the threshold. The threshold is whether [plaintiffs'] back pasture, which was cut off by a creek when they bought it, and still is cut off by a creek now, is "land locked". It is not, as land locked is a concept of being blocked from a road by ownership of another, not being inconvenienced by the physical and topographical features of the land."

Following a hearing on the newly filed exception, the trial court signed a judgment on December 10, 2024, maintaining Ms. Adams' exception of no cause of action.[6]

The Carsons filed the instant appeal,[7] contending that the trial court erred in granting the exception of no cause of action and finding that the southern portion of a tract of land that has no access to a public roadway due to a large creek is not an enclosed estate simply because the northern portion of the same tract has access to a public roadway.

Following the lodging of this appeal, on April 14, 2025, this Court, *ex proprio motu*, issued a rule to show cause order, noting that the judgment before us appeared to lack appropriate decretal language as it failed to identify the relief awarded as required by La. C.C.P. art. 1918(A) and ordering the parties to show cause by briefs whether this matter should be remanded. An interim order was subsequently issued on July 28, 2025, remanding this matter for the limited purpose of issuing an amended judgment correcting the deficiencies. The appellate record was

---

[6]Inexplicably, the trial court signed a second judgment maintaining Ms. Adams' exception of no cause of action on December 12, 2024, which was identical to the judgment signed on December 10, 2024. Once a trial court has rendered a valid final judgment, it has no authority to render a second final judgment, which is practically identical to the first judgment and adjudicates the same issues. Slaughter v. Louisiana State Employees Retirement System, 2019-0977 (La. App. 1st Cir. 6/1/20), 305 So. 3d 358, 362 n.1. Accordingly, the December 12, 2024 judgment is a nullity and without legal effect. See Judson v. Davis, 2011-0623 (La. App. 1st Cir. 11/9/11), 81 So. 3d 712, 722, writ denied, 2011-2747 (La. 2/17/12), 82 So. 3d 288. Therefore, we annul and set aside the December 12, 2024 judgment and recognize the December 10, 2024 judgment, as amended, as the proper judgment before this Court. See Matter of Succession of Buhler, 2017-0049 (La. App. 1st Cir. 2/22/18), 243 So. 3d 39, 44-45.

[7]Although the Carsons' motion for devolutive appeal references the trial court's December 12, 2024 judgment, for the reasons noted herein, we will consider this appeal as an appeal of the December 10, 2024 judgment, as amended. See Matter of Succession of Buhler, 243 So. 3d at 44-45.

supplemented with an amended judgment signed by the trial court on August 21, 2025, which maintained the exception of no cause of action and dismissed the Carsons' second amended petition with prejudice.

## DISCUSSION

### The Peremptory Exception of No Cause of Action

A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. Ramey v. DeCaire, 2003-1299 (La. 3/19/04), 869 So. 2d 114, 118. The objection of no cause of action may be raised through a peremptory exception. La. C.C.P. art. 927(5).[8] The function of the exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey, 869 So. 2d at 118.

Generally, no evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. All facts pled in the petition must be accepted as true, and any doubts are resolved in favor of the sufficiency of the petition to state a cause of action. Truitt v. West Feliciana Parish Government, 2019-0808 (La. App. 1st Cir. 2/21/20), 299 So. 3d 100, 103. Facts shown in any documents annexed to the petition must also be accepted as true. Donelon v. Americas Insurance Company, 2024-0422, 2024-0423 (La. App. 1st Cir. 12/20/24), 404 So. 3d 930, 939. The correctness of conclusions of law, however, is not conceded for the purposes of a ruling on an exception of no cause of action. Donelon, 404 So. 3d at 939.

---

[8]Louisiana Code of Civil Procedure article 927(5) was amended by La. Acts 2025, No. 250, § 3, effective August 1, 2025, to include "an objection of no cause of action in part, as to one or more but fewer than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention." The purpose of the amendment was to clarify that a partial judgment sustaining an exception raising the objection of no cause of action may be appropriate when two or more actions based on the same operative facts of a single transaction or occurrence are cumulated, thus changing the result reached by the Louisiana Supreme Court in Everything on Wheels Subaru, Inc. v. Subaru South., Inc., 616 So. 2d 1234 (La. 1993). See La. C.C.P. art. 927, COMMENTS - - 2025.

6

The only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Bayou Liberty Association, Inc. v. St. Tammany Parish Council, 2005-1228 (La. App. 1st Cir. 6/9/06), 938 So. 2d 724, 728. If the petition alleges sufficient facts to establish a case cognizable in law, the exception of no cause of action must fail. Bayou Liberty Association, Inc., 938 So. 2d at 728. Appellate courts review a judgment sustaining a peremptory exception raising the objection of no cause of action *de novo.* Truitt, 299 So. 3d at 103.

### Louisiana Civil Code Article 689 – Enclosed Estate

In their second amended petition, the Carsons contend that their property is divided into two sections by Washley Creek. The Carsons concede that the northern portion of their property has access to a public road, i.e., Traylors Trail Road, but the southern portion of their property is "land-locked" with no access to a public road. The Carsons contend they are entitled to a servitude of passage over the Adams property to access the southern portion of their property pursuant to La. C.C. art. 689 because it is not "reasonably feasible" to (re)build a bridge over Washley Creek to access the southern portion of their property. The Carsons argue that their estate is land-locked in part and thus they are entitled to passage.

Louisiana Civil Code article 689 provides that the owner of an estate that has no access to a public road may claim a right of passage over neighboring property to the nearest public road. The owner, however, is bound to compensate the neighbor for the right of passage acquired.[9]

---

[9]Louisiana Civil Code article 689 was recently amended by La. Acts 2025, No. 27, § 1, effective August 1, 2025. The revision does not change the law regarding the right of passage for an enclosed estate. The revision clarifies that compensation is owed when a right of passage is provided under this article; removes the utility servitude from the enclosed estate articles; and moves the requirement to indemnify the neighbor for any damage caused to La. C.C. art. 696. See La. C.C. art. 689, REVISION COMMENTS - - 2025(a) – (e).

Enclosed estates within the meaning of La. C.C. art. 689 (formerly article 699) are such lands that are shut off from access to public roads because they are entirely surrounded by other lands. Finn v. Eoff, 368 So. 2d 199, 201 (La. App. 1st Cir. 1979). The intention of La. C.C. art. 689 was to allow the owner of an estate enclosed through no fault of his own to obtain a servitude of passage across the property of his neighbor. Spruell v. Dudley, 2006-0015 (La. App. 1st Cir. 12/28/06), 951 So. 2d 339, 343, writ denied, 2007-0196 (La. 3/23/07), 951 So. 2d 1106. An enclosed estate pursuant to La. C.C. art. 689 encompasses the idea that property is surrounded on all sides by lands owned by others and, by virtue of this enclosure, the owner does not have access to a public road. See Finn, 368 So. 2d at 201.

A right of legal servitude of passage over neighboring property to the nearest public road is predicated on necessity. See 4 La. Civ. L. Treatise, Predial Servitudes § 5:6 (4th ed.), citing Breaux v. Bienvenu, 51 La. Ann. 687, 693, 25 So. 321, 323 (1899) ("The law does not take into account the inconveniences of the situation, nor the greater or less cost of reaching the railroads, refineries, or the public centers of business and trade, but contemplates an absolute inability of doing so without the right of way sought to be expropriated."). The inconvenience of making passage over one's own property, though extreme, is not a sufficient reason for forcing a neighbor to yield passage over his. A right of passage over a neighbor's property should only be granted in cases of extreme necessity. Pousson v. Porche, 6 La. Ann. 118, 119 (La. 1851).

On the face of their second amended petition, the Carsons conceded that the "northern portion" of their estate has access to a public road. Moreover, the Carsons made no allegation the southern portion of their estate is surrounded on all sides by land owned by others. The Carsons allege, however, that they are nonetheless entitled to a servitude of passage over the Adams property to access the "southern portion" of their property, which is "land-locked" for purposes of La. C.C. art. 689,

8

because it is not "reasonably feasible" to build a bridge over Washley Creek to access the southern portion of their property.

The Carsons argue that the language of La C.C. art. 689 is extended to define an enclosed estate as one that has insufficient access to a public road, as well as no access to a public road, relying on Corley v. C & J Frye Properties, LLC, 49,969 (La. App. 2nd Cir. 8/19/15), 176 So. 3d 439, writ denied, 2015-1887 (La. 11/20/15), 180 So. 3d 318. In Corley, the landowners had permissible access to a public road, which was temporarily interrupted during "wet season" when the access did not drain. This access was the *only* access the estate had to a public road. During these periods when the access was flooded, the court found that access was insufficient and the estate was thus enclosed. See Corley, 176 So. 3d at 442. On review, we find the instant case is distinguishable where the Carsons maintained uninterrupted access to a public road from their estate.

The Carsons further contend that a portion of property isolated from the larger tract can qualify as an enclosed estate pursuant to La. C.C. art. 689, relying on Tusson v. Hero Land Co., 446 So. 2d 346, 350 (La. App. 4th Cir.), writ denied, 449 So. 2d 1359 (La. 1984). In Tusson, a portion of Tusson's land was expropriated by the Federal Government to create a servitude for a drainage canal. The canal was constructed on the servitude across Tusson's land, which left a 42-foot-wide strip of Tusson's land between the edge of the canal and the edge of land owned by Hero Land Company. Tusson filed suit against Hero seeking, among other things, a right of access across Hero's land to reach the strip of his land isolated by the canal. Following a trial on the merits, the trial court dismissed Tusson's claims. Tusson, 446 So. 2d at 348. On appeal, Tusson argued he was entitled to a right of passage across Hero's land to reach the strip of his land that was isolated by the canal. The appellate court considered whether this servitude or canal could enclose Tusson's land such that the law would impose a duty upon Hero to provide Tusson with a right

9

of passage. The appellate court concluded that Tusson had not met his burden of proving that his land was enclosed or that the route he sought was the shortest one available. The court held that an estate was considered enclosed pursuant to La. C.C. art. 689 (formerly La. C.C. art. 699) when it is shut off from access to public roads because it is *entirely* surrounded by other lands. Tusson, 446 So. 2d at 350. The court further reasoned that it seemed "both inequitable and premature to order Hero, who did not create this situation, to provide Tusson with a right of passage when he has not tested his right to build a bridge over the canal by legal process." Tusson, 446 So. 2d at 351. Thus, the court in Tusson denied his claim to a right of passage over his neighbor's property where he had not sought judicial interpretation of the expropriation order to determine if he could legally construct a bridge across the canal to access the isolated portion of his property. Tusson, 446 So. 2d at 351.

Moreover, in Pousson, the court found that although the plaintiff argued it would be "very expensive" and inconvenient to make a passable road over his own property, because it was possible, the court required that he do so and "pass that way." Pousson, 6 La. Ann. at 119. See also Mays v. Rives, 267 So. 2d 792 (La. App. 2nd Cir. 1972) (where the court rejected plaintiff's argument that inconvenience and cost should be taken into consideration where the plaintiff's estate had access to a public road through an unimproved passageway on his own property).

On review, we find that the Carsons have not established that the law affords a remedy for their allegation that they are entitled to claim a right of passage over the Adams property to access the southern portion of their estate simply because it is not "reasonably feasible" to build a bridge over Washley Creek on their property. See Ramey, 869 So. 2d at 118. Otherwise stated, even accepting this allegation as true, the Carsons have set forth no authority, and La. C.C. art. 689 affords no express remedy, for the owner of an estate to claim a right of passage over a neighbor's

property when his estate has access to a public road, but claims it is not "reasonably feasible" to construct access to a portion of the land within his own estate.

Thus, accepting the Carsons' well-plead allegations as true, the Carsons have failed to establish a cause of action pursuant to La. C.C. art. 689. We find no merit to the Carsons' assignments of error.

## CONCLUSION

Based on the above and foregoing reasons, the August 21, 2025 amended judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs/appellants, Melinda A. Carson and Kerry L. Carson.

**AFFIRMED.**